GEORGE BULLOCK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31209.   Promulgated June 15, 1931.

*Robert A. Littleton, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

OPINION.

Love: The two issues remaining in this proceeding are (1) whether the loss of $59,930 referred to in the findings was a " capital net loss " within the meaning of that term as used in section 208 of the Revenue Act of 1924, and (2) whether either petitioner or his wife sustained a loss on the sale in 1924, of the real estate located at 111 East 57th Street, New York City, and if so, the amount thereof.

In connection with the first issue, petitioner contends that he did not hold the stock in the new company which he sold in 1924 for more than two years and that, therefore, the loss sustained was not a " capital net loss " for the reason that the asset sold was not a " capital asset " as that term is defined in section 208 (a) (8) of the Revenue Act of 1924, which section provides:

The term " capital assets " means property held by the taxpayer for more than two years (whether or not connected with his trade or business) * * *.

The respondent relies upon article 1651 of Regulations 65, made and promulgated in pursuance of the Revenue Act of 1924. This article reads in part as follows:

The term " capital assets " is defined to mean property held by the taxpayer for more than two years, whether or not connected with his trade or business, * * * The specific property sold or exchanged must in general have been held for more than two years. However, if the taxpayer has held for more than two years stock upon which a stock dividend has been declared, both the original and the dividend shares are considered to be capital assets. *Likewise, if property is exchanged for other property and no gain or loss is recognized under the provisions of section 203, and if the total period during which the original property and the property received in exchange have been held by the taxpayer is more than two years, the property received in exchange is considered to be capital assets.* [Italics supplied.]

Petitioner concedes that the loss in question would be a " capital net loss " under the above regulations, but he contends that the regulations do not correctly interpret the law in that they seek to enlarge

the term "·capital assets" as defined in the statute. We agree with the petitioner. There is nothing in the statute to warrant the respondent's position.

The stock which the petitioner sold in 1924 was stock in the new company which he received in 1923 in exchange of old stock for new. The two corporations were organized under the laws of different States. The new corporation was essentially different from the old. *Marr* v. *United States*, 268 U. S. 536. Stock in the new company constituted entirely different property from stock in the old, and not being held "for more than two years" fails to come within the term "capital assets" as defined in section 208 (a) (8), *supra.*

As stated in our findings, the respondent determined that the exchange in 1923 came within the provisions of section 202 (c) (2) of the Revenue Act of 1921, and was, therefore, such a transaction on which under the terms of the statute "no gain or loss shall be recognized." Section 202 (d) (1) of the same act provides:

Where property is exchanged for other property and no gain or loss is recognized under the provisions of subdivision (c), the property received shall, for the purposes of this section, be treated as taking the place of the property exchanged therefor, * * *

In his brief, the respondent quotes and italicizes the phrase "be treated as taking the place of the property exchanged therefor" and states that the statute is clear and requires no argument in support of his contention that the stock received in exchange should take the place of the stock exchanged, and that the two periods should, therefore, be added together for the purpose of determining whether the property sold had been held for more than two years. But Congress specifically limited the phrase in question to section 202 of the act, as appears from the words "for the purposes of this section," which would indicate it did not intend such treatment of exchanges for purposes of other sections of the statute.

We think that our conclusion becomes more apparent if we examine the history of the capital gain and loss provisions of the various acts with respect to the two-year period. Section 206 (a) (6) of the Revenue Act of 1921 provides: "The term 'capital assets' * * * means property acquired and held * * * for more than two years * * *." Section 208 (a) (8) of the Revenue Act of 1924 says: "The term 'capital assets' means property held by the taxpayer for more than two years." Section 208 (a) (8) of the Revenue Act of 1926 provides (Note: Matter in regular type same as in 1924 Act; *matter in italics new in bill as introduced in House;* MATTER IN ALL CAPITALS ADDED BY THE SENATE):

The term " capital assets " means property held by the taxpayer for more than two years (whether or not connected with his trade or business), * * * *In determining the period for which the taxpayer has held property received on an exchange there shall be included the period for which he held the property exchanged, if under the provisions of section 204 the property received has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as the property exchanged. In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under the provisions of section 204 such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person. IN DETERMINING THE PERIOD FOR WHICH THE TAXPAYER HAS HELD STOCK OR SECURI- TIES RECEIVED UPON A DISTRIBUTION WHERE NO GAIN IS RECOGNIZED TO THE DIS- TRIBUTEE UNDER THE PROVISIONS OF SUBDIVISION (C) OF SECTION 203 OF THIS ACT OR OF THE REVENUE ACT OF 1924, THERE SHALL BE INCLUDED THE PERIOD FOR WHICH HE HELD THE STOCK OR SECURITIES IN THE DISTRIBUTING CORPORATION PRIOR TO THE RECEIPT OF THE STOCK OR SECURITIES UPON SUCH DISTRIBUTION.

The matter in italics and all capitals above is new in the 1926 Act, and was not contained in the previous acts.   We have to interpret the 1924 Act and not the 1926 Act.   See *Smietanka* v. *First Trust & Savings Bank*, 257 U. S. 602.

The Committee on Ways and Means, in its report accompanying H. R. No. 1, Rept. No. 1, Union Calendar No. 1, 69th Cong., 1st sess., states, with respect to capital gains and losses, on page 6 :

The 12½ per cent capital gain and loss provisions apply only to the sale or exchange of capital assets which have been held by the taxpayer for two years.  Under the reorganization provisions many transactions are exempt from tax until the stockholder disposes of his stock received as a result of the reorganization.  As a result of this fact the question frequently arises as to whether the period that the taxpayer held the stock which he exchanged for new stock should be added to the period for which he held his new stock, in order to determine whether or not he has held it for two years.  The amendment proposed to this section incorporates in the law the present regulation of the Treasury and provides that these two periods shall be added for the purpose of determining the period during which the property sold was held for the purpose of determining both gain and loss under this section.  *The same question arises in the case of property received by gift after December 31, 1920.*  The amend- ment provides that the period in which the property was held by the donor shall be added to the period in which the property was held by the donee in deter- mining whether or not the property so received falls within the capital gain or loss section.   [Italics supplied.]

The Committee on Finance in the Senate, in its report accompany- ing H. R. No. 1, Rept. No. 52, Calendar No. 54, 69th Cong., 1st sess., incorporated the House Committee's statement and added thereto a provision relative to the last sentence of section 208 (a) (8), *supra.*

Although the Committee reports of both the House and the Sen- ate in connection with section 208 (a) (8) of the Revenue Act of

1926 say that "The same question arises in the case of property received by gift after December 31, 1920," as in the case of a nontaxable exchange, the respondent has held in the case of gifts, under the Revenue Acts of 1921 and 1924, that the two-year period provided for in the capital gain and loss sections of those acts commences to run from the date of gift rather than from the date the donor acquired the property, notwithstanding that the basis for determination of gain or loss to the donee is the cost or other basis to the donor. See I. T. 1660 (C. B. II-1, p. 36). This Board has approved the respondent's holding with respect to "gift" cases in *Magdaline McKinney et al.*, 16 B. T. A. 804; *William Kempton Johnson*, 17 B. T. A. 611; and *Dollie B. Shoenberg et al.*, 19 B. T. A. 399. We see no reason to hold that a different principle should be applied in cases of nontaxable exchanges.

We think that when Congress in the Acts of 1921 and 1924 defined capital assets to mean "property held by the taxpayer for more than two years" it intended that the *specific* property sold must have been held by *the taxpayer* for more than two years, and that under the Revenue Act of 1926 it intended to and did enlarge the term "capital assets" to include the kind of cases provided for in section 208 (a) (8) thereof. It seems clear that the provisions of the 1926 Act in this respect were new provisions.

The respondent in his brief "further contends that if the Board should find that the reorganization resulted in a closed transaction in 1923, then the Board should also find that a gain resulted on the subsequent sale of the stock by the petitioner, and that no loss is allowable in 1924." Such a contention is contrary to the actual determination of the respondent and also contrary to the stipulation agreed to by the parties that the loss from the sale of the stock in question in 1924 was the amount of $59,930. However, in our opinion, the respondent's determination that the exchange of stock for stock in 1923 was such a transaction on which "no gain or loss shall be recognized" was correct and came squarely within the provisions of section 202 (c) (2) of the 1921 Act. The loss of $59,930 was not a "capital net loss." The entire amount should be allowed as a deduction from gross income under the provisions of section 214 (a) (5) of the Revenue Act of 1924.

With respect to the second issue, petitioner in 1906 purchased certain real estate located at 111 East 57th Street, New York City. He maintained the property as a residence for three years and then abandoned it as such and made every possible effort to either rent or sell it. The property stood idle for seven years or until early in 1916, when it was rented. It was sold in 1924. Petitioner contends that he sustained a loss on the sale of the property in the amount of $38,200, computed as follows:

| | |
|---|---:|
| Fair market value at time property was rented early in 1916 and before improvements in that year were made (Land $95,000; Building $35,000) | $130,000 |
| Improvements to building in 1916 | 35,000 |
| Total | 165,000 |
| Deduct: | |
| Depreciation allowable (8 years at 3% on $70,000) | 16,800 |
| Balance after deducting depreciation | 148,200 |
| Selling Price | 110,000 |
| Alleged loss as claimed by petitioner | 38,200 |

Petitioner has conceded that any loss allowed with respect to this issue would be a " capital net loss " and come within the provisions of section 208 of the Revenue Act of 1924.

In his argument, petitioner has made no point of the fact that in 1916 he put the 57th Street property in his wife's name. This fact was gratuitously offered by petitioner in the course of his testimony at the hearing while testifying as to the amount of the improvements made in 1916. His testimony in this connection follows:

The Member: Not less than $35,000?
The Witness: Yes.
The Member: It might have been more?
The Witness: It might have been more.
The Member: It was not less?
The Witness: It was not less. At that time, your Honor, *I transferred the property to my wife's name,* and it was not entered on my own books.
By Mr. Littleton:
Q. *The title to that property, who held the title?*
A. *My wife Janet E. Bullock.* [Italics supplied.]

No further testimony was had relative to the ownership of the property. Petitioner in the remainder of his testimony, however, talked about the property as if it were his own up to the date of its sale in 1924. When asked by his counsel, " What caused you to sell it at the time you did sell it? " petitioner replied, " I needed money, and it was a heavy burden, taxation, repairs, renewals, and so forth." Under such circumstances, together with the fact that both petitioner and respondent have treated petitioner as the owner of the property when sold, we shall in this opinion regard him as the equitable owner thereof.

At the close of the hearing counsel for the respondent moved to increase the deficiency on the ground that the Board should find that petitioner made a profit on the sale of the 57th Street property of at least $40,000. In his brief, however, he abandons that contention and argues that petitioner realized neither a profit nor sustained a loss. This argument is based upon the erroneous premise that the

sale took place in 1923 and that the Revenue Act of 1921 applied, whereas the petition alleges and the evidence shows that the property was sold during the year 1924, which would bring the transaction within the provisions of the Revenue Act of 1924.

The Supreme Court has now settled the question that an individual taxpayer may sustain a deductible loss from the sale of real property originally acquired as a residence and later converted into business property. See *Heiner* v. *Tindle*, 276 U. S. 582; 6 Am. Fed. Tax Rep. 7366; and the subsequent action of the United States District Court upon a new trial as ordered by the Supreme Court in *Tindle* v. *Heiner*, 27 Fed. (2d) 1012; 6 Am. Fed. Tax Rep. 7974. See also *Joseph F. Cullman, Jr.*, 16 B. T. A. 991; *Edward L. Parker*, 19 B. T. A. 171; *Herbert L. May*, 19 B. T. A. 229; *Larkan* v. *Gage*, 28 Fed. (2d) 78; 6 Am. Fed. Tax Rep. 7986; *Plant* v. *Walsh*, 43 Fed. (2d) 256, and *W. H. Moses*, 21 B. T. A. 226.

In the *Tindle* case, which came under the Revenue Act of 1918, the taxpayer purchased a residence in 1888 for $172,000. He used it as a residence until 1901 when he abandoned it as such and leased it during the same year and continually thereafter until 1920, when he sold it for $73,706.79. The fair market value of the property in 1901 and on March 1, 1913, was $140,000 and $120,000, respectively. The Supreme Court held that there occurred in 1901 " a transaction entered into for profit " and that since the fair market value of the property on March 1, 1913, was less than the value in 1901, and less than actual cost, the taxpayer had sustained a deductible loss of the difference between the March 1, 1913, value and selling price, or $46,293.21.

Petitioner's theory in the instant case relative to the alleged loss of $38,200 is that the renting of the property in 1916 constituted a " transaction entered into for profit " within the meaning of that term as used in section 214 (a) (5) of the Revenue Act of 1924. The respondent does not question that it was a transaction entered into for profit, and both parties appear to have accepted the 1916 date as the date of conversion.

We do not agree with petitioner as to the amount of the loss as shown in his computation set forth above. Petitioner uses as a basis the amount of $130,000, which is the fair market value of the property at the time it was converted into business uses in 1916, and cites as authority therefor the case of *Heiner* v. *Tindle, supra*. We do not think that *Heiner* v. *Tindle, supra*, so holds where, as in the instant case, the fair market value of the property on March 1, 1913, is *less* than the value at the time the property was so converted.

If the instant sale had occurred under the 1921 Act, as applied by the respondent, petitioner would not have been entitled to any de-

duction, for the reason that he would have sustained no *actual* loss, based upon the difference between the cost and selling price with proper allowance for depreciation, as we held in *Joseph F. Cullman, Jr., supra*, citing in support thereof *United States* v. *Flannery*, 268 U. S. 98; and *United States* v. *Ludey*, 274 U. S. 295. The computation showing no actual loss would have been as follows:

| | |
|---|---|
| Original cost of land and building in 1906 | $75, 000 |
| Improvements to building in 1906 | 10, 000 |
| Improvements to building in 1916 | 35, 000 |
| Total cost | 120, 000 |
| Deduct: | |
| Depreciation (8 years at 3% on at least $45,000) | 10, 800 |
| Balance after deducting depreciation | 109, 200 |
| Selling price | 110, 000 |
| Nontaxable gain (instead of a loss) | 800 |

The sale occurred in *1924*, and is, therefore, controlled by the Revenue Act of 1924. See section 283 of the latter act. This act changed the basis for determining gain or loss in the case of property acquired prior to March 1, 1913, from what it had been in the earlier acts, so as to allow as the basis in the case of property acquired prior to March 1, 1913, the cost or March 1, 1913, value, *whichever was greater*. The applicable sections of the Revenue Act of 1924 are:

Sec. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

(b) In computing the amount of gain or loss under subdivision (a) proper adjustment shall be made for * * * any item of loss, exhaustion, wear and tear, * * * previously allowed with respect to such property.

\* \* \* \* \* \* \* \*

Sec. 204. * * * (b) The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (a) the cost of such property * * * or (b) the fair market value of such property as of March 1, 1913, whichever is greater.

c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property * * *.

Although the total cost of the property in the instant case was $120,000, which amount was also the fair market value of the property as of March 1, 1913, $35,000 of such cost occurred in 1916, which was subsequent to March 1, 1913, so that for purposes of comparison to determine which of the two amounts was greater under section 204 (b), *supra*, we hold that only the cost up to March 1, 1913,

namely, $85,000, should be compared with the fair market value of the property on the same date, namely, $120,000. This comparison shows that the fair market value of the property on March 1, 1913, was greater than cost.

It then remains to be determined whether the fair market value of the property on March 1, 1913, of $120,000, or the fair market value when rented in 1916, of $130,000, should be used as a basis for determining the loss. The particular language of *Heiner* v. *Tindle, supra,* relied upon by petitioner is as follows:

For the purpose of computing the loss resulting from this particular transaction we think it must stand on the same footing as losses resulting from a similar use of property acquired by gift or devise and that whenever needful the fair market value of the property at the time when the *transaction for profit was entered into may be taken as the basis for computing the loss.* [Italics petitioner's.]

But in the last paragraph of its opinion the Supreme Court said:

The findings show that the property was sold for less than its cost and the loss deducted was the difference between its March 1, 1913 value and the sale price. *The only loss deductible here under subsection (a) (5) is one incurred in a transaction entered into for profit, later than the date of purchase. For all that appears from the findings the loss which had occurred between the date of purchase and March 1, 1913, may have occurred before the property was devoted to rental purposes.* For that reason the findings do not support the judgment. The cause should be remanded for a new trial so that the value of the property as of October 1, 1901, when rented, may be found. *If that value is larger than the value of March 1, 1913, the deduction made below should be allowed. If less, only the difference, if any, between its then value and the sale price should be allowed.* See *United States* v. *Flannery,* 268 U. S. 98, 45 S. Ct. 420, 69 L. Ed. 865; *McCaughn* v. *Ludington,* 268 U. S. 106, 45 S. Ct. 423, 69 L. Ed. 868. [Italics supplied.]

Upon new trial, the District Court found the fair market value of the property as of October 1, 1901, was $140,000, so that in the *Tindle* case the values considered were:

| | |
|---|---|
| Cost in 1888 | $172, 000. 00 |
| Fair market value, October 1, 1901 | 140, 000. 00 |
| Fair market value, March 1, 1913 | 120, 000. 00 |
| Selling price in 1920 | 73, 706. 79 |
| Loss allowed | 46, 293. 21 |

It should be noted that the above loss of $46,293.21 is the difference between the *March 1, 1913,* value and the selling price. The March 1, 1913, value was " taken as the basis for computing the loss " and it did not become " needful " to take " the fair market value of the property at the time when the transaction for profit was entered into." The latter value was used only as a limitation upon the loss that would have been allowed under section 202 (a) of the Revenue Act of 1918, and *United States* v. *Flannery,* 268 U. S. 98, if the

original acquisition, instead of being a "personal" transaction (i. e., acquisition of a residence) governed by section 215 (a) of the 1918 Act, had been a "transaction entered into for profit" and governed by section 214 (a) (5) of the 1918 Act; the limitation being for the purpose of ascertaining whether any part of such statutory loss "may have occurred before the property was devoted to rental purposes," since the "only loss deductible here under subsection (a) (5) is one incurred in a transaction entered into for profit." If the value when rented had been found to have been less than the March 1, 1913, value, "only the difference, if any, between its then value (when rented) and the sale price" could have been allowed under the Supreme Court's decision.

The *Tindle* decision in effect holds that in determining the loss sustained from the sale of property originally acquired as a residence, and later converted into business property, the rule is to compute the amount of the loss, first, in accordance with the applicable statute dealing with the computation of gain or loss from the sale or other disposition of property, and, second, to allow as a deduction only that portion of the loss so determined as occurred subsequent to the time the property was converted into business uses.

Such a rule as the one just stated is in complete harmony with the recent decision by the Second Circuit in *Mitchell* v. *Commis-sioner*, 48 Fed. (2d) 697 (Apr. 13, 1931, affirming the same case reported at 18 B. T. A. 994). The *Mitchell* case was controlled by the Revenue Act of 1921. The taxpayer there purchased certain "option warrants" in 1911 at a cost of $5.94 each, which had a March 1, 1913, value of $13 each. The options expired and became worthless in 1921. The question was whether the loss should be computed on the basis of cost or the March 1, 1913, value. Section 202 of the 1921 Act provided that in the "sale or other disposi-tion of property" the basis for ascertaining the loss should be cost or March 1, 1913, value, whichever is less. The taxpayer contended (1) that the expiration of the options was neither a "sale or other disposition" of property; (2) that the loss was one occurring under section 214 in a "transaction entered into for profit"; and (3) that the provision in section 214 that "the deduction shall be computed upon the basis of its fair market price or value as of March 1, 1913," made it mandatory that the loss there should be computed on the basis of the March 1, 1913, value of $13 per option warrant. The court fully agreed with the first two contentions of the taxpayer and also agreed that the provision in section 214 which provided that "the deduction shall be computed upon the basis of its fair market price or value as of March 1, 1913," was

applicable *but only as a limitation upon the amount of the actual loss* that would otherwise have been deductible. After citing *United States* v. *Flannery, supra; McCaughn* v.. *Ludington,* 268 U. S. 106; and *Heiner* v. *Tindle, supra,* and after quoting from the *Flannery* case, the Circuit Court said:

The allowance of anything beyond an *actual loss* would be most unlikely in the absence of a clear legislative mandate. The provision in Section 214 (a) (6) that losses are to be computed upon the basis of the "fair market price or value as of March 1, 1913" should be construed, like other similar clauses, as *merely a limitation upon losses* that would otherwise have been deductible. While Congress can, of course, allow such deductions as it pleases and limit them as it will, it cannot reasonably be thought to have intended in any case to have allowed more than actual losses. * * * *The value on March 1, 1913, is only important to set a limit to the deductible loss, if cost exceeded the value on that date.* [Italics supplied.]

The reason for applying such a rule of limitation is much stronger in the instant case than in the *Mitchell* case. Under the court's construction in the latter case, the statute actually prescribed the March 1, 1913, value as the basis for the kind of loss involved in that case. Yet, notwithstanding the specific provision of section 214, the court applied the basis provided in section 214 merely as a limitation upon the amount of the actual loss otherwise determinable under section 202. In the instant case there is no specific statutory provision which prescribes what the basis for loss shall be on the sale or other disposition of property where such property was originally acquired as a residence and later converted into business property. Section 204 (b) of the Revenue Act of 1924, *supra,* does provide, however, that the ".basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (a) the cost of such property * * * or (b) the fair market value of such property as of March 1, 1913, whichever is greater" and the Supreme Court in the *Tindle* case says "that *whenever needful* the fair market value of the property at the time when the transaction for profit was entered into *may be taken* as the basis for computing the loss." The value when converted did not prove "needful" in the *Tindle* case itself, and we think such value is not the proper basis for the determination of petitioner's loss.

In the instant case, after taking depreciation into consideration which is not questioned and the additions made in 1916, the different values of the 57th Street property which are material are as follows:

| | |
|---|---:|
| Cost to petitioner in 1906 | $109, 200 |
| March 1, 1913, value | 138, 200 |
| 1916 value when converted | 148, 200 |
| Selling price in 1924 | 110, 000 |

If petitioner had originally acquired the property as a residence and had never converted it into business uses, he would have been entitled to no deductible loss upon its sale. Section 215 (a) (1), Revenue Act of 1924; *W. H. Moses, supra.* If petitioner had originally acquired the property as business property, his deductible loss would have been $28,200, the difference between the March 1, 1913, value and selling price. Section 204 (b), *supra.* The actual fact is that petitioner originally acquired the property as a residence and later converted it into business property in 1916. If we should sustain petitioner's contention that his deductible loss is $38,200, we would be allowing him as a part of the deductible loss the $10,000 increment which occurred between March 1, 1913, and 1916, which increment cost him nothing and on which no taxes were paid. There is no authority in the statute for such a holding and we think it is contrary to the intendment of the decisions already discussed. It also seems unreasonable to assume that either Congress or the courts ever intended that one who acquires a piece of property first as a residence and later converts it into business property, should be entitled to a greater loss than one whose original transaction was one entered into for profit.

It is our opinion that the instant case is controlled by section 204 (b), *supra,* and that the value in 1916 should be used only as a limitation upon the actual loss prescribed by the statute, which is $28,200, the difference between the March 1, 1913, value (after taking additions and depreciation into consideration) and the selling price. None of this actual loss occurred while the property was held as a residence between March 1, 1913, and 1916, for the reason that during this period its value actually increased in the amount of $10,000. Since the value in 1916 was greater than the March 1, 1913, value, the entire actual loss prescribed by the statute occurred after the conversion took place. We, therefore, hold petitioner is entitled to a deduction as a loss from the sale of his 57th Street property the amount of $28,200 computed as follows:

| | |
|---|---|
| Fair market value as of March 1, 1913 (land $85,000; building $35,000) | $120,000 |
| Improvements to building in 1916 | 35,000 |
| Total | 155,000 |
| Deduct: | |
| Depreciation as computed by petitioner (8 years at 3% on $70,000) | 16,800 |
| Balance after deducting depreciation | 138,200 |
| Selling price | 110,000 |
| Allowable loss | 28,200 |

The deficiency should be recomputed in accordance with the foregoing findings and opinion.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

STERNHAGEN and McMAHON dissent.

---

TRAMMELL, dissenting: It would seem reasonable to say that if the evidence clearly establishes that from a certain day the residential property was no longer property of that character, but was either rented or was on the market for rental and efforts were being made to rent it, it was rental property and therefore business property from the time it was sought to rent it. In *Heiner* v. *Tindle*, 276 U. S. 582, there was no difference between the actual abandonment as a residential property and the rental thereof and it was not necessary for the court to draw a distinction in that case between the actual rental of the property and the abandonment as residential property and the undertaking to rent it. The court did say " the loss here has resulted from the sale of property *not used* for residential purposes by the taxpayer and the transaction entered into for profit and resulting in the loss was not the purchase of the property but its appropriation to rental purposes." It seems to me that property is just as effectively appropriated to rental purposes when it has been definitely abandoned as a residence and offered for rental purposes.

If the view should be taken that the abandonment of the property as residential property and the placing it on the market as rental property was the conversion from residential to business property, then, in my opinion, the conclusion reached in the prevailing opinion would be correct. Since this transaction occurred previous to March 1, 1913, the March 1, 1913, value would be one of the factors to be determined. If the property was not abandoned or converted into business property until subsequent to March 1, 1913, in my opinion, the March 1, 1913, value is not a factor in this case. In this connection the Supreme Court, in the case of *Heiner* v. *Tindle*, supra, said:

For the purpose of computing the loss resulting from this particular transaction, we think it must stand on the same footing as losses resulting from a similar use of property acquired by gift or devise and that *whenever needful* the fair market value of the property at the time of the transaction for profit was entered into may be taken as a basis for computing the loss.

In my opinion, it is needful to do this when the transaction occurred subsequent to March 1, 1913, and in such a case the value of the property on the date of conversion into business property represents the cost or investment upon which the deductible loss is based. We

can not go back of the date of the transaction entered into for profit. We have simply a case where a transaction was entered into for profit in 1916 and that transaction resulted in a loss. Certainly if the property had been purchased in 1916 there would be no occasion to go back and determine any March 1, 1913, value, or if property had been acquired by gift or devise in 1916, there would be no occasion to determine a March 1, 1913, value and the court clearly states that, for the purposes of computing a loss when residential property has been converted into business property, the transaction would stand on the same footing as a loss resulting under similar use of property acquired by gift or devise. Since the transaction for profit was entered into in 1916, the only question to be determined is what was this fair market value on the date of conversion, what was the sale price received therefor in the taxable year, and how much depreciation should be deducted, giving effect, of course, to any additions or improvements made at the time of conversion or subsequently.

The case of *Tindle* v. *Heiner, supra; United States* v. *Flannery, supra; McCaughn* v. *Ludington, supra,* and other cases cited in the prevailing opinion were controlled by acts prior to the Revenue Act of 1924. The latter act made a decided change and allowed for the first time a loss based on March 1, 1913, value or cost, whichever was greater. Thereafter the deduction was no longer limited to the " actual loss."

For the foregoing reason, I am unable to concur in the conclusion reached in the prevailing opinion.

MURDOCK agrees with this dissent.