Louise Biesik v. Commissioner.
Biesik v. Commissioner
Docket No. 92729.
United States Tax Court
T.C. Memo 1963-97; 1963 Tax Ct. Memo LEXIS 244; 22 T.C.M. (CCH) 464; T.C.M. (RIA) 63097; April 4, 1963
Martin N. Sussman, Esq., 6001 W. Capitol Dr., Milwaukee, Wis., for the petitioner. Jerome M. Feltman, Esq., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in income tax for the calendar year 1959 in the amount of $409.82, all of which is in dispute. The only issue to be decided is the amount of the loss the petitioner was entitled to deduct under section 165(c)(1), Internal Revenue Code of 1954, on the sale of certain rental property. The amount of the loss depends entirely on a determination of the fair market value of the residential property on the date of its conversion into income-producing *245 use, adjusted for depreciation for the period between the conversion and the sale. The parties agree that the residential property was converted into rental property prior to sale, thereby making any loss on the sale deductible as a loss incurred in a trade or business. The stipulated facts are hereby found accordingly. Louise Biesik (hereinafter called petitioner) is a widow residing at 1203 South 50th Street, Milwaukee, Wisconsin. She is employed as a hand presser by E. Weinshel and Brothers Company. She filed her income tax return for the year 1959 with the district director of internal revenue at Milwaukee. On her return the petitioner reported gross income of $3,070.89 and showed a net loss of $2,044.47 from the sale of the real property in question. This resulted in a claimed overpayment of $434.87. The land and building at 1524-A North 18th Street, Milwaukee, Wisconsin (hereinafter referred to as the property), was acquired on February 11, 1954, by the petitioner and her late husband, John F. Biesik, as a joint tenancy with right of survivorship. It was used by them as their personal residence until John F. Biesik died on April 3, 1958, at which time the petitioner acquired *246 his one-half interest in the property by survivorship and became the sole owner thereof. The Biesiks purchased the property for $3,400. They paid $1,700 in cash and executed a mortgage of $1,700 in favor of the City Federal Savings and Loan Association of Milwaukee. This mortgage was payable at the rate of $25 per month. On the date of John F. Biesik's death there was a balance due thereon of $786.99. The property was located in what was described by Francis Jendusa, Chief Assessor, Milwaukee Tax Commissioner's office, as the inner-core of the city of Milwaukee. This is an older and less desirable section in which real estate is undergoing a constant decline in value. Jendusa testified that after 1958 it was almost impossible to get a regular mortgage from a lending institution on any property located in the inner-core. Consequently, the real estate market in that area is limited to a "speculator class" who arrange their own financing with purchasers. The property consisted of a wood frame cottage which was razed in 1962. It had a total of 664.20 square feet. The lot was 48.5 feet long and 30 feet wide. The foundation was concrete block and the roof was described as a double pitch *247 gable covered with rolled roofing. It had two bedrooms, a kitchen and a living room with only one room having hardwood floors. Originally constructed in 1875, the sides of the building were covered in 1936 with asbestos shingles. It had an attic and a full basement. The bathroom facilities were located in the basement. It was heated by a handfired coal furnace. The rear entrance was to an alleyway and the only access to a public street, 18th Street, was by perpetual casement across the front half of the lot. The Biesiks had the property insured for fire and extended coverage in the face amount of $5,000. In 1955 the property was inspected by John O. Behrens, a Real Estate Assessor in the Milwaukee Tax Commissioner's office, who determined that its "basic structural value" was $3,175 for real estate assessment purposes. While the City of Milwaukee assessed the property at $1,800 in 1958 and $1,980 in 1959, these assessments, according to the testimony of Chief Assessor Jendusa, represented quoted ratios of 46.23 and 56.4 to "full true value" and, therefore, indicated market values of $3,890 and $3,510 respectively. The indicated market value had dropped to $2,460 by 1961. The *248 petitioner, a frank and forthright individual, testified that she vacated the premises on the day her husband died in the Veterans Hospital because she was afraid to continue to live in the neighborhood alone. Except for this property the petitioner's husband left her only $401.72. The Veterans Administration paid his burial costs. Being unable to make the mortgage payments and also live elsewhere, the petitioner's son made the monthly payments. Petitioner listed the property for sale with Levings and Sons Real Estate Company at an offering price of $3,900. Jack Levings stated that his firm thought that the property would "sell for somewhere between $2,900 and $3,900." However, this listing was held through January 1, 1959, without selling the property. Between March 1, 1959, and June 30, 1959, the property was rented for the first time for $40 per month. The tenant occupied the premises for four months and was requested by petitioner to vacate because of nonpayment of rent, with the result that only one month's rent was collected. After the tenant vacated, the property was damaged by vandals and the petitioner paid for the repairs. The petitioner tried unsuccessfully to locate *249 another tenant. Finally, on October 3 and 4, 1959, while in dire financial need, she placed an advertisement in the Milwaukee Sentinel offering the property for sale. On October 19, 1959, the property was sold by the petitioner to Elden and Julia Baxter for $1,400, less $55.15 for closing costs. Although the sale was obviously a bona fide arms-length transaction, we are convinced by the evidence before us that the petitioner sold the property under compulsion [1] and that $1,400 did not represent its true fair market value on the date (March 1, 1959) of its conversion to rental property. The petitioner used the money she received to repay her son $300, to pay off the balance of $368.24 due on the mortgage to the City Federal Savings and Loan Association, and to liquidate other debts. *250 Approximately one year later the Baxters sold the property for $2,500. In determining loss from the sale of residential property which has been converted to rental property, the basis of the property is the fair market value at the time it was so converted, where market value was less than cost adjusted for depreciation. Heiner v. Tindle, 276 U.S. 582. George Bullock, 23 B.T.A. 710; Joseph F. Cullman, Jr., 16 B.T.A. 991. Here the property's cost less depreciation was $3,589.32. We think its fair market value on the date of conversion to rental property was less than $3,589.32. The question is solely one of fair market value at the time of conversion. Petitioner contends that it was at least $3,589.32; respondent argues that it was no more than $1,400. It would serve no useful purpose to embark upon a detailed discussion of the evidence. We have already summarized the pertinent facts and circumstances. We have carefully considered the entire record and hereby find as a fact that the fair market value of the property at the time of conversion to rental purposes was $3,000. Decision will be entered under Rule 50. Footnotes
1. Petitioner testified as follows: Q. Mrs. Biesik, will you tell the Court in your own words why you sold this property for the price you did? A. Well, I was afraid to live there in that neighborhood. Q. Is there any other reason, Mrs. Biesik? A. All the damage was done over there. I just couldn't take it no more. I thought I would have to sell it. That's all. Q. You have listed this property with Levings for $3,900, correct? Why didn't you wait until you could get a better price? A. I couldn't see no way out. I just had to sell because I needed the money. Q. If you hadn't needed the money would you have sold the house? A. No, I wouldn't.↩