GAYLE D. HIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hix v. Commissioner
Docket No. 10368-77.
United States Tax Court
T.C. Memo 1979-105; 1979 Tax Ct. Memo LEXIS 423; 38 T.C.M. (CCH) 491; T.C.M. (RIA) 79105; March 22, 1979, Filed Gayle D. Hix, pro se. Gordon F. Moore II, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1974 in the amount of $4,119.20.The issues for decision are (1) the amount of loss to which petitioner is entitled in 1974 on the sale of rental property; (2) whether *424 petitioner is entitled to a deduction for moving expenses and, if so, the amount; and (3) whether petitioner is entitled to a deduction for home office expenses and, if so. the amount. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, an individual who resided in Cornwells Heights, Pennsylvania at the time of the filing of the petition in this case, filed a Federal income tax return for the calendar year 1974. In 1969 petitioner, who was married at the time, moved to Illinois. In 1970 he acquired approximately 4-1/2 acres of property in the country near Tuscola, Illinois. Petitioner's stepson, who was approximately 14 years old in 1970, and petitioner personally wor-ed on clearing the property, removing some old buildings and fences and various types of rubble. After they had cleared the property, petitioner put out bids for a large house which he wanted to build on the property. The bids for building the house, not including any of the furnishings such as carpets and drapes, ranged between $62,000 and $65,000. Petitioner then decided to do much of the work on the house himself. He got an Amish contractor to build the foundation *425 and the shell of the house. Then, with the help of a friend and his stepson, petitioner began doing all of the remaining work on the house. Petitioner, his friend and his stepson did the insulating, the electrical wiring, the heating and air conditioning, the plumbing in all three bathrooms, all the painting and all the interior carpentry work. Petitioner made no payment to either his stepson or to his friend for their help in connection with the house. Petitioner had helped his friend to build, wire and paint a garage and to paint his house for no charge, and the friend helped him on his house for no charge. When the house was livable, petitioner and his family moved into it. At that time, petitioner needed a loan on the house to finish the house and to pay off a previous construction loan. Petitioner had approximately $4,000 from the sale of a prior house and $3,000 he received as insurance when a barn burned down which he did not replace. He therefore decided that he could pay the construction loan and finish the house for an additional $36,000. He applied to a savings and loan association for a $36,000 loan. In connection with the granting of the loan, the savings and *426 loan association appraised petitioner's property on February 1, 1972, at $62,690. On this basis they granted petitioner the $36,000 loan. After petitioner received the loan, he finished the interior to the house, including installing tile, air conditioning equipment, carpeting and drapes, at a cost of $8,331. The total amount which petitioner spent in building the house, not including his labor and the labor of his friend and stepson but including the land cost, was between $45,000 and $50,000. In September 1972, petitioner and his wife were divorced. They discussed what should be done about a division of the value of the house. Petitioner's wife did not have funds to pay petitioner for his interest in the house and petitioner was unwilling to transfer the property to her in a divorce settlement.They therefore agreed that when petitioner sold the house his wife would receive $12,000 of the sales proceeds. In connection with making this agreement, petitioner's wife consulted several people in the real estate business and obtained estimates from them ranging from $80,000 to $100,000 as the fair market valud of the house. Petitioner, on the basis of the square footage of the *427 house, concluded that its value at that time was approximately $75,000. In arriving at the $12,000 to be paid to his wife, petitioner assumed the house to have a value of $75,000. Petitioner still owed the $36,000 he had borrowed from the savings and loan association on the house and he determined that it would cost at least $3,000 to sell the house. Petitioner therefore expected that he would retain $36,000 net from the sale of the house. Initially, petitioner's wife wanted one-half of that amount, or $18,000, arguing that her stepson had done as much work on the house as petitioner. Petitioner argued that this was not the fact and finally they arrived at the figure of $12,000 to be paid to petitioner's wife, taking into consideration the work her son had done in connection with building the house. Petitioner put the house on the market for sale and, when he received no offers for purchase of the house, he decided to rent it. In July 1973 petitioner rented the house and it remained rented until it was sold. Around the first part of April 1974, petitioner received a call from the real estate firm handling the house informing him of an offer on the house of $55,000. Petitioner *428 refused the offer, saying he must get at least $65,000 since he had agreed to pay his ex-wife $12,000 when the house was sold. Finally, an offer of $60,000 was received and, after negotiating with his wife, she agreed to take $11,000 instead of $12,000 of the proceeds. On April 16, 1974, petitioner sold the house and lot for $60,000. Petitioner had continued to live in the house until approximately July 1973 when he moved in order to accept a position with a new firm. In 1973 petitioner paid expenses in connection with his move for transportation, meals and lodging and temporary living quarters in excess of the amount he received for reimbursement. During 1974 petitioner was considering investing in the stock market. At the time, he was working for a chemical company and was furnished an office by that company. He rarely did any of his employer's work at his home, but he did read a number of books about stock purchases in his home. Petitioner, on his 1974 Federal income tax return, claimed a loss on the sale of his house in the amount of $16,054.95, computed as follows: Sales price
$60,000.00
Petitioner's assumed value of
the property at February 1, 1974
76,854.95
Loss on Sale
$16,854.95
*429 On his tax return he claimed moving expenses in the amount of $2,415, explained as expenses incident to the sale or exchange of his residence, and in addition the following expenses which he stated were paid in 1973: Transportation expenses in moving household
goods and personal effects $ 821.09
Travel, meals, and lodging expenses in moving
from former to new residence
155.89
Temporary living expenses in new location or
area during any 30 consecutive days after
obtaining empolyment
85.00
TOTAL
$1,061.98
On his 1974 return, petitioner also claimed a deduction in the amount of $525 as an "office in home" expense. Respondent, in his notice of deficiency, disallowed $12,513.45 of the claimed loss on the sale of rental property, leaving a loss allowed of $4,341.50. Respondent disallowed the entire $3,476.98 of moving expenses claimed to be deductible and the entire $525 home office expense claimed to be deductible. Respondent made adjustments with respect to medical expense deductions of petitioner and sales tax deductions on the basis of his other adjustments, and these items are not in issue other than as a matter of computation upon a determination *430 of the other issues in this case. Respondent, by stipulation, agreed that in July 1973 petitioner converted what had previously been his residence to rental property and conceded that petitioner was entitled to a loss with respect to the sale of this property of $12,078, computed as follows: Cost of Property
$62,690.00
Less value assigned to land
6,300.00
Cost of depreciable property
$56,390.00
Plus, improvements prior to con-
version of property to rental
property
8,331.00
Basis for depreciation
$64,721.00
Depreciation allowed: (straight line; useful life of
25 years)
1973 (1/2 year)
$1 1,295.00
1974 (1/4 year)
648.00
1,943.00
Adjusted basis of depreciable
property
$62,778.00
Plus, value assigned to land
6,300.00
Adjusted basis of property sold
$69,078.00
Less, sales price
$60,000.00
Less, broker's commission
3,000.00
57,000.00
Loss on sale
$12,078.00
Respondent, in arriving at the cost of the property of $62,690, used the replacement cost figures shown in the appraisal statement made by the savings and loan association at the time petitioner was granted a loan based on replacement costs. OPINION Section *431 165, I.R.C. 1954, [1] provides for deductibility of losses by individuals incurred in a trade or business or in a transaction entered into for profit. Section 1.165-9(b)(2), Income Tax Regs., [2] provides that if property is constructed by a taxpayer for use as his personal residence but is coverted to rental property prior to its sale, a loss sustained on the sale is an allowable deduction under section 165(a). This regulation further provides that upon the sale of the property the excess of the adjusted basis for determining gain or loss over the selling price determines the amount of the loss and that the adjusted basis is the lesser of the fair market value of the property at the time it is converted to rental use less appropriate depreciation or the cost of the property less allowable for depreciation. The provisions of this regulation have been approved by this Court. See Emmet v. Commissioner,11 T.C. 90, 95-96 (1948); Bullock v. Commissioner,23 B.T.A. 710, 720-721 (1931). *432 The record here shows that petitioner's actual cost of the house, which would be its basis to him before allowance for depreciation, was only between $45,000 and $50,000 plus any portion of the $11,000 paid by petitioner to his ex-wife when the house was sold that might be considered as payment for labor done by petitioner's stepson. If the maximum figure of $50,000 is used as the cost of the house before any payment for labor done by petitioner's stepson and the total $11,000 is considered as payment for labor of his stepson (neither of which facts is supported by the record), the resulting figure of $61,000 is less than the $62,690 which respondent concedes to be the cost to petitioner of the property prior to improvements. Petitioner argues that the cost should be increased by the value of his labor and the labor of his friend. However, petitioner paid out no amount for his own labor or the labor of his friend. Petitioner reported no income from his labor on his own house or his labor on the garage and house owned by his friend. The labor on petitioner's house by his friend was in exchange for work done by petitioner from which petitioner had reported no income. Therefore, *433 there is nothing to be included in the cost of the house for the work petitioner did on the house or the work done by petitioner's friend on the house without charge. Section 1011 of the Code and secfton 1.1011-1 of the Income Tax Regulations provide for the determination of the adjusted basis of property. Section 1011 and 1012 of the Code and section 1.1011-1 of the Regulations specifically provide that the basis of property is the cost of the property and the adjusted basis is the cost with certain adjustments, one of which is a reduction for depreciation allowed or allowable. The gain or loss on the sale of property is computed by subtracting from the amount received from the property, the adjusted basis of the property and the cost of selling the property.On this basis, we conclude that petitioner is entitled to no loss on the sale of his residence in excess of the amount conceded by respondent. Clearly, petitioner is not entitled to deduct in 1974 items paid in 1973. At the trial and by stipulation, petitioner agreed that if respondent's computation of the loss on the sale of his house was accepted, which computation allowed as an adjustment to the sales price the broker's *434 commission, he was not entitled to deduct the $2,415 claimed as expenses incident to the sale of his house as a moving expense. Since we have held that the proper loss by petitioner on the sale of his house is the amount conceded by respondent, this item is no longer an issue. Petitioner has totally failed to show the need of a home office for a trade or business or for transactions entered into for property in 1974. Clearly, this record does not establish that petitioner was in any trade or business in 1974 other than as an employee for a company that furnished him an office. Petitioner's testimony was that he was studying in order to begin a program of investment in stocks. There is no showing in this record that petitioner's use of part of his home to read books to prepare to make investments in stock causes a part of his expense of maintaining his house to be a deductible business expense. We sustain respondent's disallowance of petitioner's claimed deduction of $525 for home office expenses. See discussion in Sharon v. Commissioner,66 T.C. 515, 522-24 (1976). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. SEC. 1.165-9 Sale of residential property. * * *
(b) Property converted from personal use. * * * (2) The loss allowed under this paragraph upon the sale of the property shall be the excess of the adjusted basis prescribed in sec. 1.1011-1 for determining loss over the amount realized from the sale. For this purpose, the adjusted basis for determining loss shall be the lesser of either of the following amounts, adjusted as prescribed in sec. 1.1011-1 for the period subsequent to the conversion of the property to income-producing purposes: (i) The fair market value of the property at the time of conversion, or (ii) The adjusted basis for loss, at the time of conversion, determined under sec. 1.1011-1 but without reference to the fair market value.↩