HEINER, COLLECTOR, *v.* TINDLE ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 341. Argued March 7, 1928.—Decided April 9, 1928.

1. Under the Revenue Act of 1918, § 215, (a), 5, the devotion of a house theretofore purchased and used as the taxpayer's residence, exclusively to the production of taxable income in the form of rentals, is a " transaction entered into for profit " as of the date when the change was made; and when such change occurred before March 1, 1913, and the new use continued until the property was sold at a loss after the date of the Act, the amount of loss deductible in computing net income is the difference between the sale price and the value of the property on the date of the change, or, if that value be larger than the March 1, 1913, value, then the difference between the sale price and the value on March 1, 1913. P. 585.

2. Article 141 of Treasury Regulations 45, refers to property used by the taxpayer as a residence up to the time of sale. P. 586.

18 F. (2d) 452, reversed.

CERTIORARI, 275 U. S. 514, to a judgment of the Circuit Court of Appeals, which reversed a judgment for the Collector in an action to recover money paid as income taxes.

*Mr. Gardner P. Lloyd, Special Assistant to the Attorney General,* with whom *Solicitor General Mitchell* was on the brief, for petitioner.

*Mr. James Walton,* with whom *Mr. Clarence A. Miller* was on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

Before 1892 the late Philander C. Knox built a dwelling house in Pittsburgh, at a total cost for land and buildings of $172,000. He occupied the house as a residence until 1901 when, circumstances requiring his residence elsewhere, he leased the property at a stipulated rental. He continued so to lease it from October 1st in that year until 1920, when it was sold for $73,000. The fair market value of the property on March 1, 1913, was $120,000. Its value in 1901 does not appear. In his income tax return for 1920 he deducted from gross income the difference between the selling price of the property and its March 1, 1913, value, less depreciation from that date to the date of sale. The commissioner disallowed the deduction and assessed a correspondingly increased tax, which was paid under protest. The present suit was brought in the district court for western Pennsylvania to recover the additional tax assessed. The trial was to the court, a jury having been waived by written stipulation. Judgment was given for the collector, 17 F. (2d) 522, which was reversed by the circuit court of appeals for the third circuit. 18 F. (2d) 452.

The tax was assessed under the Revenue Act of 1918, c. 18, 40 Stat. 1057. Section 214 specifies deductions which may be made from gross income in computing the tax and sub-section (a)5 permits the deduction of "losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business." Section 215 provides that "in computing net income no deduction shall in any case be allowed in respect of (a) personal, living, or family expenses." Treasury Regulations 45, promulgated April 17, 1919, and in force during 1920, provide: "Art. 141 . . . A loss in the sale of an individual's residence is not deductible." This was amended on January 28, 1921, to read: " . . . A loss in the sale of residential property is not deductible unless the property was purchased or constructed by the taxpayer with a view to its subsequent sale for pecuniary profit." This regulation has remained unchanged under the Revenue Acts of 1921, 1924 and 1926. See Art. 141 of Regulations 62, Regulations 65 and Regulations 69.

That the exchange value of a dwelling house may increase or diminish is a consideration not usually overlooked by one who purchases it for residential purposes, but the quoted Regulations appear to assume that the acquisition of such property cannot be a transaction for profit within the meaning of sub-section (a)5 of § 214, if the dominating purpose of it is the use of the property for a home. The correctness of that view is not before us, for there is no finding that the taxpayer built his dwelling with any hope or expectation of profit. See *Appeal of D'Oench*, 3 B. T. A. 24.

But the findings amply support the view of the court of appeals that the purpose to use the property as a residence of the taxpayer came to an end when it was leased

in 1901, and that from that date until it was sold nineteen years later it was devoted exclusively to the production of a profit in the form of net rentals. It is not questioned that if in 1901 the property had been purchased for that use or inherited and so used the loss might have been deducted, but it is said, as the district court held, that the only transaction entered into with respect to the property was the purchase of the land and the erection of the house, regardless of the use which might afterwards be made of it, and that these acts did not appear to be a transaction entered into for profit.

But the words " any transaction " as used in sub-section (a)5 are not a technical phrase or one of art. They must therefore be taken in their usual sense and, so taken, they are, we think, broad enough to embrace at least any action or business operation, such as that with which we are now concerned, by which property previously acquired is devoted exclusively to the production of taxable income. We can perceive no reason why they should not be so taken unless that construction is inconsistent with the purpose or with particular provisions of the Act. Section 214, read as a whole, discloses plainly a general purpose to permit deductions of capital losses wherever the capital investment is used to produce taxable income, and the inclusion of the present deduction in those described in sub-section (a)5 would seem to be entirely harmonious with that purpose.

But it is pointed out that § 202 of the Revenue Act of 1918, prescribing the method of computing gain or loss upon the sale of property, makes value as of March 1, 1913, or cost if acquired later, the basis of the computation. It is said that this is inconsistent with the use of the market value of the property at the date of rental as the basis of the computation, which would be necessary if the construction contended for were given to sub-section

(a)5, and that in any case a computation on that basis would involve administrative difficulties in determining the value, which should lead to a different interpretation.

But it is obvious that § 202 is not all inclusive. The same and no greater inconsistency and difficulty arise in the case of property acquired by gift, bequest or devise, when market value at the time of acquisition by the donee and not cost is necessarily the basis of computing the tax. That in such cases the difference between the sale price and market value at the date of acquisition, if after March 1, 1913, is deductible under sub-section (a)5, is not questioned. The ascertainment of market value of the property at that date would not seem to involve any greater administrative difficulty than the ascertainment of market value on March 1, 1913. Section 202 itself provides that in the case of exchange the property shall be taken at this fair market value, and under the Act of 1918 this was likewise provided for in the case of property acquired by gift, devise or bequest, by Regulations 45, Art. 1562, which was incorporated in the later acts. Revenue Act of 1921, c. 136, 42 Stat. 227, § 202 (a)2; Revenue Act of 1924, c. 234, 43 Stat. 253, § 204 (a)2; Revenue Act of 1926, c. 27, 44 Stat. 9, § 204 (a)2.

For the purpose of computing the loss resulting from this particular transaction we think it must stand on the same footing as losses resulting from a similar use of property acquired by gift or devise and that whenever needful the fair value of the property at the time when the transaction for profit was entered into may be taken as the basis for computing the loss.

Article 141 of the Regulations presents no necessary inconsistency with the construction of § 214(a) 5, contended for by the respondent. The article both in its original and in its amended form obviously refers to the

sale of residential property of the taxpayer, that is to say, property used by him as a residence up to the time of the sale. Only if that is its meaning can it be reconciled with the Treasury rulings that losses on the sale of residential property acquired by gift, devise or bequest and devoted to rental purposes may be deducted. The loss here has resulted from the sale of property not used for residential purposes by the taxpayer, and the transaction entered into for profit and resulting in the loss was not the purchase of the property but its appropriation to rental purposes. The article of the Regulations by its terms has no application to a loss so incurred.

The findings show that the property was sold for less than its cost and the loss deducted was the difference between its March 1, 1913, value and the sale price. The only loss deductible here under sub-section (a) 5 is one incurred in a transaction entered into for profit, later than the date of purchase. For all that appears from the findings the loss which had occurred between the date of purchase and March 1, 1913, may have occurred before the property was devoted to rental purposes. For that reason the findings do not support the judgment. The cause should be remanded for a new trial so that the value of the property as of October 1, 1901, when rented, may be found. If that value is larger than the value of March 1, 1913, the deduction made below should be allowed; if less, only the difference, if any, between its then value and the sale price should be allowed. See *United States* v. *Flannery,* 268 U. S. 98; *McCaughn* v. *Ludington,* 268 U. S. 106.

*Reversed.*