*431 OPINION.
Disney ;
The question as to the bona fides of the sale should first be considered. There is conflict of evidence in this regard. Respondent stresses the facts that the sale was made by petitioner’s *432 third cousin, a member of a firm of stockbrokers, that although the stock was sold for $10, the expenses of the sale were $48.50; that the stock was purchased by this third cousin (for his wife) and that later, in 1933, the petitioner purchased more stock in the New England Boat Co., buying 25 shares at $100 per share, and that the purchaser in 1933 received $510 as a liquidating dividend. These circumstances do cast doubt upon the bona fides of the sale. Nevertheless, we believe that the petitioner has shown such bona fides. The stock did not again vest in petitioner. The sale to the wife of a distant relative obviously does not negative bona fides. Although less was received from the stock than the expenses of the sale, yet the sale was at public auction, and the petitioner might have received more than the expenses of sale. The acquisition of stock later in 1933 is shown to have been in effect an advancement of money for expenses, rather than a real sale of stock, this being done by the petitioner and others interested in the success of the Yankee. The stock sold in 1930 passed completely out of the ownership of the petitioner. We are of the opinion and hold that the sale was bona fide.
Is petitioner entitled to a loss upon the sale of the stock either as a loss incurred in trade or business, or as one taken upon a transaction entered into for profit ? He does not contend that the matter be considered an ordinary and necessary business expense as such. The statute relied upon, section 23 (e) (1) and (2) of the Revenue Act of 1928,[1] is set forth in the margin.
We shall first examine the matters here presented as to whether they show a loss incurred in a transaction entered into for profit. The petitioner at the outset concedes that the New England Boat Co. was not engaged in a business venture or enterprise and that its purposes and activities constituted a sporting and not a business venture; but he takes the view that his connection therewith is not determined by the character of the activities of the New England Boat Co. In this we think he is correct, for he might have a valid business and profit-seeking connection with the New England Boat Co., though the company itself was engaged in sport. The question just here is as to the nature of petitioner’s individual activity in the matter, as to whether to him it was a transaction entered into for profit. He concedes and testified that he did not expect to make a profit from the sale of the stock of the New England Boat Co.; that he *433 did not expect any ordinary dividends, though he did expect liquidating dividends; that he expected to take a loss of from $25,000 to $50,000 on the deal; and that he was willing to invest that amount in that form of advertising.
The taking of a loss does not negative the idea of a profit transaction ; but the expectation of profit must be present. Samuel Riker, Jr., Executor, 6 B. T. A. 890. In the face of the positive evidence of petitioner himself that he expected to take a loss of a minimum of $25,000, there is no room for a conclusion that there was any expectation of profit. Using the words “any transaction entered into for profit” in their usual and generic sense (Heiner v. Tindle, 276 U. S. 582; Helvering v. Midland, Mutual Life Insurance Co., 300 U. S. 216), they force the conclusion, when applied to petitioner’s testimony, that the transaction here was not entered into for profit. It will not do to say that in some indirect manner it was hoped that this transaction, though in itself expected to be a loss, would ultimately benefit the petitioner by way of enhanced reputation. Practical considerations of taxes require that direct effects be considered here.
We hold that the transaction here does not fall under the category of transactions entered into for profit. Even if hope of ultimate benefit by enhancement of reputation were considered as making the transaction one entered into for profit, petitioner here has not shown loss, for, since the profit was not expected directly in the New England Boat Co. stock, it necessarily must have been expected, if at all, in the benefit to business by enhancement of reputation — and the record plainly proves such enhancement of reputation, instead of loss in that respect.
The same considerations largely dispose of petitioner’s second contention, that there was loss “incurred in trade or business.” If we assume for a moment that the transaction was within petitioner’s trade or business, it must be because of including within that term a transaction in indirect advertising for the ultimate benefit of the trade or business, for petitioner was not in the business of purchase and sale of corporate stocks. The same logic which prompts a contention that cost of such advertising to enhance reputation is a part of the business dictates that favorable result from such advertising means, to some extent at least, gain, and not loss, in business. Petitioner on brief argues there is here considered “a business promotional plan, somewhat in the nature of advertising.” Since the record shows to an indefinite, but at least considerable degree, actual enhancement of reputation, it can not be said that such business promotional plan, in the nature of advertising, has resulted in a loss to petitioner. Petitioner may have realized enhanced reputation of value more than the investment or loss in stock.
*434 We think the very difficulty of evaluating profit or loss in such an intangible as necessarily enters into consideration here indicates well that such advertising expense is to be dealt with as business expense or capital expenditure, and not as a transaction entered into for profit or in trade or business. We have held that in case of extraordinary expenditure for advertising, resulting in benefit to a business in the year of expenditure as well as subsequent years, such expenditure is properly to be regarded as capital investment as to the future years and in part as current operating expense properly chargeable against current income, and that proper allocation must be shown by the petitioner. Colonial Ice Cream Co., 7 B. T. A. 154; Richmond Hosiery Mills, 6 B. T. A. 1247; affd., 29 Fed. (2d) 262; Northwestern Yeast Co., 5 B. T. A. 232. Petitioner presents no such allocation here, and, as above seen, he does not ask that the matter be treated as one of business expense. In Welch v. Helvering, 290 U. S. 111, the Supreme Court affirmed the Circuit Court (63 Fed. (2d) 976) and the Board, 25 B. T. A. 117, which sustained the Commissioner’s ruling that payments made by an individual of debts of a bankrupt corporation with which he had been associated, in order to reestablish his relations with customers and to solidify his credit and standing, were not deductible as ordinary and necessary expenses and were “rather in the nature of capital expenditures, an outlay for the development of reputation and good will.” The Supreme Court said: “Reputation and learning are akin to capital assets, like the good will of an old partnership.” We hold that petitioner has not shown loss incurred in trade or business.
We find a deficiency in the amount determined by the respondent, which deficiency has been paid.
Reviewed by the Board.

Decision will he entered for the respondent.

 SEC. 23. DEDUCTIONS EROM GROSS INCOME.
In computing net income there shall be allowed as deductions :
(e) Losses ly individuals— In the case of an individual, losses sustained during the taxable year and not compensated lor by insurance or otherwise—
(1) if incurred in trade or business; or
(2) if incurred in any transaction entered into for profit though not connected with the trade or business.