Susan Avery Jones v. Commissioner.
Jones v. Commissioner
Docket No. 676.
United States Tax Court
1944 Tax Ct. Memo LEXIS 86; 3 T.C.M. (CCH) 1060; T.C.M. (RIA) 44331; October 10, 1944
*86 John R. Riley, Esq., and Darius F. Johnson, Esq., 428 Title Insurance Bldg., Los Angeles, Calif., for the petitioner. Byron M. Coon, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves an income tax deficiency for the year 1940 in the sum of $4,781.48. Several adjustments to petitioner's income were made by respondent but this proceeding challenges only one. The sole issue is whether respondent erred in refusing to allow as a deduction a loss sustained on the sale of certain real estate. The case was heard upon oral and documentary evidence. Findings of Fact Petitioner is an individual residing in Los Angeles, California. She filed her income tax return for 1940 with the collector of internal revenue for the sixth district of California. She is the widow of Grover Jones, a highly successful author and scenario writer, who died in September, 1940. In 1927 petitioner and her then husband, Grover Jones, entered into a contract for the purchase of certain real estate in Beverly Hills, California, hereinafter referred to as Tiger Tail. The purchase price was $16,500. Payments were completed in May 1931 and at that time petitioner *87 and her husband received a deed to this property as joint tenants. The lot was irregularly shaped and at the time of purchase, petitioner and her husband were advised by the broker that they would have no difficulty in buying an adjoining lot at a low price, which would fill out the tract to form a rectangular piece. Petitioner and her husband purchased this property intending to build a home thereon. When the payments were finally completed and the deed received, petitioner's husband commenced negotiations for the so-called corner lot which he felt was needed to complete the tract. The owner of this lot was a non-resident and when his price for the property was made known. Jones decided immediately that he would not pay it, but that he would build his home elsewhere. He asked his real estate broker to list Tiger Tail for sale and very soon thereafter purchased a residence on Sunset Boulevard, and occupied it with petitioner as their home. During the period from June 1931 to 1937 petitioner and her husband purchased additional ground for the Sunset Boulevard home and eventually in 1937 razed the original building and erected a palatial mansion with extensive landscaping, elaborate *88 dog kennels, a swimming pool and other improvements found only in the most expensive homes. The total cost was approximately $250,000. Its original cost was not in excess of $27,500. When the petitioner and her husband purchased the home on Sunset Boulevard they abandoned any intention to build their future home on Tiger Tail. During 1932 and 1933 they spent large sums of money improving it as a residential site, which included installation of a sprinkler system, a driveway, the building of a road along one side of the property, and other extensive improvements, including the planting of trees and shrubs. This was done in an effort to make the property more salable and to minimize their loss in this connection. No buildings were ever erected and the property never produced any income. On several occasions Jones was offered $10,000 for Tiger Tall and each time he refused to accept. He had become so enraged over his inability to acquire the small lot needed to complete Tiger Tail that he refused to sell unless he got his money out of it. On several occasions real estate men discussed with Jones the possibility of trades and exchanges for ranches but nothing ever came of these discussions. *89 After Jones' death in September, 1940 petitioner sold Tiger Tail for $7,500. The value of Tiger Tail in May or June, 1931, when petitioner and her husband purchased the home on Sunset Boulevard, was $16,500. The money and effort expended by petitioner and her husband after June 1931 to promote the sale of Tiger Tail do not constitute a transaction entered into for profit. Opinion In her income tax return for 1940 petitioner deducted as an ordinary loss the sum of $17,560.60 as arising out of the sale of Tiger Tail in December 1940 for $7,500. Respondent, in addition to other adjustments not here material, denied the deduction as not incurred in any transaction entered into for profit within the meaning of section 23 (e)(2) of the Internal Revenue Code. That section reads as follows: SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * * * *
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * * At the *90 trial of this case the parties agreed that the value of the property in May or June 1931 was $16,500 and that if petitioner is correct in her contention the actual loss amounts to $9,000. Petitioner argues that when Tiger Tail was abandoned as a possible future home it became a transaction entered into for profit. She urges that the money spent by her and her husband in improving it together with listing it for sale with brokers demonstrate that it was held for profit within the meaning of this section. Respondent argues that there was no overt act which definitely committed the Joneses to holding it for profit so as to entitle petitioner to the deduction. It is apparent that the original purchase of Tiger Tail was for the personal benefit of the Joneses who planned to build their home there. Did the abandonment of the property for this purpose, coupled with the extensive improvements and the purchase and occupancy of a residence elsewhere, convert it into a transaction entered into for profit within the meaning of the above section? We think that it did not. The cases cited by petitioner in her brief deal in the main with properties which were rented or otherwise devoted to the *91 production of income. Heiner v. Tindle, 276 U.S. 582, the leading authority for cases of this type, and other similar cases decided since that decision, all turned on the happening of some event which ended the personal residential character of the property. In the Tindle case it was the leasing of the residence that the court singled out as marking the transition. The leasing demonstrated an intent on the part of the owner to convert the property to income purposes. Counsel argue that petitioner should not be penalized for failure to procure income from property where no buildings existed to supply the income. It is not the lack of buildings and rental income therefrom which is responsible for our decision. We do not think that the dealings of petitioner and her husband with Tiger Tail, after the purchase of the Sunset Boulevard property, amount to a transaction within the meaning of this section. The evidence is uncontradicted that the money spent by petitioner and her husband on Tiger Tail was to minimize their loss. Minimizing a loss is not profit. See Bowers v. Kerbaugh-Empire Co., 271 U.S. 170. The Tiger Tail *92 transaction was entered into for personal reasons. Nothing petitioner or her husband did in connection therewith caused it to lose this character. Improvements made by petitioner and her husband were ordinary and customary in landscaping a tract for residential use. The sprinkler system, the driveway, the terrace, the shrubbery and trees, all these made the property more desirable from their standpoint as well as prospective purchasers. At any time petitioner and her husband could have erected a home thereon and had the benefits of their expenditures. There is no evidence of any zoning laws which restricted the use of the property. This was a comparatively large tract of land, approximately three-fourths of an acre, and the owners could have conceivably divided it into smaller but still attractively sized building lots, in keeping with the smaller homes erected nearby. No effort was made to rent it for any purpose. The fact that the property was listed for sale with various brokers and that several trades were suggested involving ranch property is not persuasive. The mere listing of residential property with a broker without more is insufficient to transform it into property dealt *93 with for profit within the meaning of section 23 (e)(2). Morgan v. Commissioner, 76 Fed. (2d) 390. Some additional act or event in connection with the property is necessary. This can be illustrated by leasing or renting, by remodeling or by any other act which would show a clear cut intention on the part of the owner to change the character of the property. Rumsey v. Commissioner, 82 Fed. (2d) 158. Cert denied. Nothing in this record convinces us that petitioner has sustained her burden of showing that the dealings with Tiger Tail amounted to a transaction entered into for profit. Decision will be entered for respondent.