GAUNT v. GLENN, Collector of Internal Revenue.

Civil Action No. 958.

District Court, W. D. Kentucky, at Louisville.

Feb. 10, 1947.

748

H. H. Mathis, of Louisville, Ky., for plaintiff.

Douglas W. McGregor, Asst. Atty. Gen., Andrew D. Sharpe and Henry L. Spencer, Sp. Assts. to Atty. Gen., and David C. Walls, U. S. Atty., and A. Roy Copeland, Asst. U. S. Atty., both of Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

By this action, plaintiff seeks to recover $3,847.94 income tax assessment of $3,404.-80 and interest of $443.14, made against her by the Commissioner of Internal Revenue, on or about April 5, 1944, and paid by the plaintiff May 16, 1944.

The deficiency assessment grew out of the disallowance by the Commissioner of a loss of $6,891.30 claimed by the plaintiff on the sale of real estate and the disallowance of a short-term capital loss of $95.30.

Plaintiff filed claim for refund on or about May 19, 1944, and after six months had elapsed without notice of any action being taken on the claim, she filed this suit seeking to recover the tax and interest.

### Findings of Fact.

Prior to November 7, 1941, plaintiff was the owner of residential property in Jefferson County, Kentucky, which she had acquired from her husband upon his death and known as "Glenview." The total cost of the lot, which was acquired by plaintiff's husband in 1926, and the residence constructed thereon in 1927 and 1928, was approximately $85,000. The residence was large and required from three to five servants for its proper maintenance and comfortable occupancy.

Subsequent to the death of plaintiff's husband, her health became bad, servants were difficult to obtain and she desired very much to sell the property. She first placed it on the market without the assistance of any realtor and sought to sell it for $65,000. Being unsuccessful, she reduced her price to $50,000, and after several years without success in selling the property, plaintiff enlisted the aid of Major D. W. Fairleigh, Vice President of the Lincoln Bank & Trust Company.

Major Fairleigh's efforts to assist her in selling the property began in the latter part of 1940 or the early part of 1941. He says of plaintiff's physical condition at that time "She was in wretched health, highly nervous and distraught." Major Fairleigh caused the property to be listed for sale with Mr. J. E. Taylor, a realtor of high standing and experience in Louisville, Kentucky.

Dr. Joseph C. Bell saw one of the plaintiff's advertisements of the Glenview property in 1940, called her, and at her invitation inspected the property. Dr. Bell, at that time, was the owner of residential property known in this record as "Indianola." He was unable and unwilling to purchase the Glenview property otherwise than by a trade involving the transfer of the Indianola property in part payment of the purchase price for Glenview.

Major Fairleigh inspected the Indianola property in 1940 and advised Dr. Bell by letter that only $8,000 would be considered as the value of Indianola when crediting it on the purchase of Glenview.

Upon receipt of this letter, Dr. Bell dismissed the matter from his mind until in September or October of 1941, when he again noticed a newspaper advertisement by J. E. Taylor, realtor, offering Glenview for sale. He contacted Mr. Taylor and told him that he was willing to pay $15,000 and transfer his Indianola property as the purchase price for Glenview. Subsequently, and on November 7, 1941, this sale was consummated, the $15,000 being evidenced by Dr. Bell's notes.

On this same date—November 7, 1941— the Indianola property was conveyed by Dr. Bell and wife to Mrs. Gaunt, and Mrs.

Gaunt conveyed the same to J. E. Taylor, who had negotiated the sale of Glenview. The consideration paid by J. E. Taylor for Indianola was a series of notes aggregating $5,000 and the satisfaction of his account against Mrs. Gaunt in the amount of $1,000, the agreed commission to be paid him for his services in selling the Glenview property.

After painting the residence on the Indianola property and making other improvements, Mr. Taylor sold that property in the Spring of 1942 for a net amount which he estimated to be from $11,000 to $12,000.

Plaintiff was asked what period of time elapsed from the date she made the trade to sell the Glenview property to Dr. Bell and her decision to sell Indianola. Her reply was "I had always decided that I would sell Indianola when I took it in."

Mr. Taylor, plaintiff's real estate agent, says concerning her purpose in taking in the Indianola property—

"She did not take that property in to live in. She wanted to dispose of it right away."

In her income tax return for 1941, plaintiff claimed an ordinary loss on her residence in the sum of $6,891.30 and a net loss of $2,176.20 on the sale of Indianola, and on the latter she also claimed a deduction of $95.30 as allowable against a capital net gain from other sources. In computing the ordinary and capital losses on Indianola, twenty-five per cent of the value was allocated to the land and seventy-five per cent to the residence. Plaintiff claimed that in her sale of the Glenview property, the Indianola property was valued at, and at that time had a value of, $15,000.

The ordinary loss is claimed to be deductible under Section 23(e) (2), and the short-term capital loss under Section 117 of the Internal Revenue Code, Title 26 U. S.C.A.

It was the intention of plaintiff, at the time she agreed to accept from Dr. Bell the Indianola property as part of the purchase price for her Glenview property, immediately to sell the Indianola property, but the transfer of the Glenview property to Dr. Bell and the transfer of the Indianola property to J. E. Taylor were separate transactions, carrying out plaintiff's intention to relieve herself of the ownership of any real estate, and carrying into effect a fixed intention which she admittedly had when she agreed to accept Dr. Bell's offer to purchase the Glenview property.

Plaintiff intended to sell the Indianola property; she did not intend to occupy it as a residence.

The sale by plaintiff to J. E. Taylor of the Indianola property was not discussed or agreed upon until after the terms of the sale of the Glenview property to Dr. Bell had been fully accepted by plaintiff and Dr. Bell. When that transaction was completed, plaintiff then called upon her adviser, Major Fairleigh, to sell the Indianola property.

The sale of Indianola was a transaction entered into for profit and not connected with plaintiff's trade or business.

In the case of Terry v. United States, D.C.Conn., 10 F.Supp. 183, it is said that if the deductibility of a loss resulting from a sale depends at all upon the taxpayer's purpose or motive, the significant motive is that which actuated the original acquisition of the subject matter and not at all the motive actuating its sale. This reasoning is not adopted in this case, except for its persuasiveness that the sale by Mrs. Gaunt of the Glenview property was a transaction separate and distinct from her sale of Indianola.

As was said by the Supreme Court in the case of Heiner v. Tindle, 276 U.S. 582, 585, 48 S.Ct. 326, 327, 72 L.Ed. 714:

"But the words 'any transaction' as used in sub-section (a) 5, are not a technical phrase or one of art. They must therefore be taken in their usual sense and, so taken, they are, we think, broad enough to embrace at least any action or business operation, such as that with which we are now concerned, by which property previously acquired is devoted exclusively to the production of taxable income."

A transaction originally not entered into for profit may by later change become one for profit, and just so may a transaction which is entered into for profit become one not for profit, when the owner's ulti-

mate disposition of the property evidences a change in the nature of the transaction's intended purpose. The disposition and the acquisition are both material as to whether the transaction is entered into for profit within the contemplation of the income tax law. Evans v. Rothensies, 3 Cir., 114 F.2d 958.

The remaining question is the fair market value of the Indianola property as of November 7, 1941.

There is the usual variety in the opinions of the witnesses who testified. Mr. Goodman says the property was worth $12,000; Roy H. Foeman says it was worth from $7,500 to $7,700; A. J. Eline values it at $8,000; Dandridge Lyon at $8,500. All of these witnesses were experienced and capable realtors.

In 1940, plaintiff's agent, Major Fairleigh, inspected the property then occupied by Dr. Bell, for the purpose of determining its value for the benefit of the plaintiff. His opinion at that time was that it was worth $8,000.

The fair market value of Indianola on November 7, 1941, was $8,000.

Conclusions of Law.

1. This Court has jurisdiction of this action under Title 28 U.S.C.A. § 41(20).

2. Under the provisions of Title 26 U.S.C.A. Internal Revenue Code, § 23, individual taxpayers are entitled to deductions on account of losses sustained during the taxable year (not compensated for by insurance or otherwise) if the losses were incurred in a transaction entered into for profit.

3. Under the provisions of Title 26 U.S.C.A. Internal Revenue Code, § 111, a loss arising out of the sale of property is the excess of the adjusted basis, provided in Section 113(b) for determining loss, over the amount realized.

4. Plaintiff sustained a loss in the sale of the Indianola property, which is represented by the difference in the price received by her for the property of $6,000, and its fair market value on November 7, 1941, of $8,000.

Judgment may be submitted in accordance with the foregoing memorandum.