Austin Bertrand Wood v. Commissioner. Emma Wood v. Commissioner.
Wood v. Commissioner
Docket Nos. 20372, 20373.
United States Tax Court
1950 Tax Ct. Memo LEXIS 275; 9 T.C.M. (CCH) 142; T.C.M. (RIA) 50048; February 21, 1950
*275 Upon the evidence, held: 1. Respondent did not err in determining that petitioner's closing inventories were understated for the years 1944 and 1945. 2. Petitioner's loss on the sale of property was properly reduced by the additional amount of depreciation allowed or allowable. 3. Petitioner's net income for the year 1944 was understated in the amount of $176.76 representing the cost of shares transferred to petitioner's wife. 4. Respondent did not err in determining that petitioner did not sustain a deductible loss from the sale of rental property located at 1718 Forest Avenue, Dallas, Texas. 5. The gain realized by petitioner in 1944 on the sale of 100 shares of Electric Bond and Share Corporation was a long-term capital gain. 6. Respondent did not err in determining that the loss of $340 sustained by petitioner in 1944 on the sale of "30 Realty Trust" was a long-term capital loss deductible only to the extent of 50 per cent. 7. The gain of $3,833.46 realized by petitioner in 1945 from the sale of United States Treasury bonds was a longterm capital gain. 8. The gain of $813.07 realized by petitioner in 1945 from the sale of 300 shares of Electric Bond and Share *276 Corporation was a long-term capital gain. 9. The gains realized by petitioner in 1945 from the sale of 500 shares of American Power and Light Corporation and 200 shares of Electric Power and Light were long-term capital gains. 10. Petitioner was not a dealer in securities during the year 1946 and all gains and losses from the sale of securities were capital gains or losses. 11. The gain determined by respondent on the sale of United States Treasury bonds in 1946 should not be reduced by an amount of $382.57. Austin Bertrand Wood, pro se. Stanley B. Anderson, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion BLACK, Judge: In these consolidated proceedings the Commissioner determined deficiencies in income tax for the years 1944, 1945 and 1946, as follows: Docket
Petitioner
No.
Year
Deficiency
Austin Bertrand Wood
20372
1944
$2,172.05
1945
2,212.90
1946
460.88
Emma Wood
20373
1944
2,172.05
1945
2,212.90
1946
460.88
Petitioners filed separate returns for the years involved on a community property basis with the Collector of Internal Revenue, Dallas, Texas. The deficiencies are due to numerous adjustments to petitioners' net incomes as disclosed in their returns. By appropriate assignments of error petitioners contest most of the adjustments made by respondent for these years. Petitioners allege that certain gains returned as ordinary income are actually gains from the sale of capital assets. The case was presented upon oral testimony and exhibits. The case of petitioner Emma Wood is here solely because *278 of her community property status with her husband. For the sake of convenience petitioner Austin B. Wood will hereinafter be referred to as petitioner. The issues for our consideration are as follows: 1. Did respondent erroneously determine that inventories at the close of the years 1944 and 1945 were understated in petitioner's returns in the respective amounts of $13,968.69 and $8,229.18? 2. Did respondent erroneously determine that the loss of $1,823.96 claimed by petitioner on the sale in 1944 of property located at 3212 Live Oak Street, Dallas, Texas, should be reduced by an amount of $350 representing additional depreciation allowed or allowable? 3. Did respondent erroneously determine that the cost of stock transferred by petitioner to his wife in 1944 was overstated by an amount of $200 representing the cost of four shares of First National Bank stock? 4. Did respondent erroneously determine that petitioner did not sustain a deductible loss from the sale of rental property located at 1718 Forest Avenue, Dallas, Texas? 5. Was the gain realized by petitioner in 1944 on the sale of 100 shares of Electric Bond and Share Corporation a long-term capital gain? 6. Did *279 respondent erroneously determine that the loss of $640 sustained by petitioner in 1944 on the sale of "30 Realty Trust" was a long-term capital loss deductible only to the extent of 50 per cent? 7. Was the gain of $3,833.46 realized by petitioner in 1945 from the sale of United States Treasury bonds purchased in 1944 a long-term capital gain? 8. Was the gain of $813.07 realized by petitioner in 1945 from the sale of 300 shares of Electric Bond and Share Corporation a long-term capital gain? 9. Were the gains realized by petitioner in 1945 from the sale of 500 shares of American Power and Light Corporation and 200 shares of Electric Power and Light Corporation long-term capital gains? 10. Had petitioner ceased to be a dealer in securities prior to the taxable year 1946 so that all gains from the sale of securities in 1946 were taxable as capital gains? 11. Should the gain determined by respondent on the sale of United States Treasury bonds in 1946 be reduced by an amount of $382.57? In General During the years 1944 and 1945 petitioner was a dealer in securities. As a dealer he maintained an office in Dallas, Texas, buying and selling securities of the Southwest Territory *280 and especially those close to Dallas. During this period petitioner commingled his securities so that it was impossible to identify the particular securities sold. Included in inventory were also some securities purchased and held for his own personal investment and speculation. Issue 1. During the years 1944 and 1945 petitioner was a dealer in securities, licensed by the Securities Exchange Commission. During those years there was intermingling and commingling of these securities so that petitioner could not identify individual securities. Petitioner's returns for the years 1944 and 1945 disclose that petitioner inventoried his securities both at the beginning and ending of the taxable years. The profit from the sales of securities was reported as ordinary income. Petitioner determined his inventory by deducting the sales price of securities from his cost. If petitioner purchased 100 shares of stock at $150 a share or a total cost of $15,000 and sold 20 shares for $175 a share or a total of $3,500, he would have left 80 shares which he would value at $11,500. This was done consistently for many years. Petitioner used this method because he felt that his profit on any lot of securities *281 could not be finally determined until all shares of that lot were sold. For example, one of petitioner's inventories showed 74 shares of First National Bank stock at a total of $14.73 while, at the same time, none of his purchases of these shares were less than $50 per share. Respondent determined petitioner's closing inventory for the years 1944 and 1945 on the basis of the first-in, first-out method of arriving at cost. It was determined that the petitioner's closing inventories for the years 1944 and 1945 were understated in the respective amounts of $13,968.69 and $8,229.18. Net community income for these years was accordingly increased by the amounts shown above. In accordance with section 22(c) of the Internal Revenue Code which is printed in the margin [1] inventories must conform to the best accounting practice in the trade or business and they must clearly reflect income. As long as the method of valuing inventory is consistent, it should not be disturbed if the method substantially reflects income. Cf. The Buss Co., 2 B.T.A. 266. However, mere consistency loses its virtue when the inventory fails to reflect income. Cf. Pittsburgh Bridge & Iron Works, Inc. v. Heiner, (D.C.W.D. Pa., 1928) 25 Fed. (2d) 900. *282 Petitioner's method of valuing inventory manifestly fails to reflect income. In his returns for the years 1944 and 1945, petitioner stated that inventory was valued at cost; however, the method employed by petitioner in valuing his inventory resulted in a valuation which, in fact, did not approach actual cost. Petitioner's inventories were understated at the close of the taxable years and, therefore, respondent was justified in disregarding them and computing net income upon a basis which clearly reflects income. Because petitioner could not identify the securities sold, respondent's method of determining inventory on the basis of first-in, first-out is sustained. However, in a recomputation under Rule 50, in computing petitioner's *283 inventories for 1944 and 1945, securities held for investment or speculation covered by issues 5 through 9 should be eliminated. These securities were not properly carried in inventory. Issue 2. On December 8, 1944, petitioner sold a dwelling at 3212 Live Oak Street, Dallas, Texas, for $4,000. Petitioner's original return discloses that the house was purchased January 4, 1926. Petitioner's cost as of the date of sale was $8,343.96. Depreciation allowed or allowable is shown as $2,520. From these figures petitioner computed his loss as $1,823.96 and which amount was taken into account in determining his adjusted gross income. The Commissioner in his deficiency notice made the following explanation of adjustment with respect to this $1,823.96 los which petitioner deducted on his return: (a) Loss on sale of dwelling located at 3212 Live Oak, Dallas,
Texas, per your return
$1,823.96
As corrected
1,473.96(1)
Loss decreased
$ 350.00
(1) Cost, December 8, 1948 [sic]
$8,343.96
Less: Depreciation allowed or allowable
2,870.00
Adjusted basis for loss
$5,473.96
Selling price
4,000.00
Corrected loss, as above
$1,473.96 Respondent determined that *284 the depreciation allowed or allowable is $2,870, an increase of $350. The depreciation computed by resondent is not contested by petitioner. In the state of the evidence and the pleadings in the record which we have before us this adjustment of respondent is approved. The answer of respondent does not affirmatively raise the issue that he erred in treating petitioner's loss on the sale of this parcel of real estate as an ordinary loss allowable in full and that he should have treated it as a long-term capital loss with only 50 per cent thereof being taken into account. We, therefore, leave this adjustment as the Commissioner made it in his deficiency notice, no error appearing therein under the pleadings and the evidence. Issue 3. Early in 1944 petitioner acquired 310 shares of stock in the First National Bank of Dallas at a total cost of $16,437.25, or at an approximate cost of $53 a share. On or about March 24, 1944, petitioner received as a 20 per cent stock dividend 62 shares of the above-mentioned stock. On or about July 17, 1944, petitioner transferred four shares of this stock to his wife. Petitioner never reduced his inventory cost by the value of the four shares so transferred. *285 In the deficiency notice respondent increased net community income for 1944 by $200 representing the cost of the four shares at $50 a share. The deficiency notice did not take into consideration the stock dividend of 62 shares and respondent concedes that giving consideration to the stock dividend, the cost of the four shares is $176.76 or $46.19 a share. The adjustment of $176.76 is therefore substituted for $200the adjustment in the deficiency notice. Petitioner contends that no adjustment should be made because these four shares transferred were received as a stock dividend and therefore have a basis of zero. Section 113 (a) (19) (A) (ii) of the Internal Revenue Code, Regulations 111, section 29.113 (a) (19)-1 (a), and section 29.113 (a) (12)-1 (1) require that the basis of each share will be the quotient of the cost or other basis of the old shares of stock divided by the total number of the old and new shares. Respondent's determination of a basis of $44.19 a share is in accordance with the statute and regulations cited above. Because petitioner failed to reduce his inventory cost by the cost of the shares so transferred, petitioner's income was understated *286 to the extent of $176.76 and respondent properly added this figure to net income. Issue 4. In 1916 petitioner purchased improved property located at 1718 Forest Avenue, Dallas, Texas. The lot was 50 X 154 and the house located thereon had six rooms downstairs and 2 rooms upstairs. The house had been built at least five years prior to 1916. As of January 1, 1937, the property was converted into rental property. The original cost to petitoner was $7,628.31. In petitioner's return for 1944, Schedule F, the cost or other basis for depreciation was shown to be $2,000. Depreciaion was claimed and allowed at the rate of five per cent on the $2,000 basis. On January 2, 1945, the property was sold for a net price of $5,624.90. Petitioner claimed a long-term capital loss of $594.58 as a result of the sale. The loss was determined by petitioner in the following manner: Net proceeds of sale
$5,624.90
Fire insurance premium refund
14.24
$5,639.14
Cost
7,628.31
Loss on sale
$1,989.17
Depreciation allowed
800.00
$1,189.17
50% taken into account
594.58 In the deficiency notice the claimed loss was disallowed with the following explanation: (c) Loss claimed from sale of rental
property at 1718 Forest Avenue,
Dallas, Texas, is held unallowable.
Sales price
$6,000.00
Less: Expense of sale
375.10
Net proceeds
$5,624.90
Fair market value as of January
1, 1937: Land
$2,700.00
Improvements
3,000.00
Fair market value of property
$5,700.00
Less: Depreciation allowed
800.00
Basis for loss determination
$4,900.00
*287 Inasmuch as the property cost $7,628.31 no gain can be computed. Consequently no gain or loss resulted from the sale. Petitioner is not entitled to take his loss, if any, upon the basis of cost but must use as a basis the fair market value of the property at the time it was converted to business use. Heiner v. Tindle, et al., 276 U.S. 582. Petitioner contends that respondent's adjustment is erroneous because the fair market value of the property as of January 1, 1937, was $7,000. The only evidence to support petitioner's contention is his own opinion as to the value of the property and petitioner was unable to make an allocation between the value of the land and improvements. Without sufficient evidence we cannot disturb respondent's finding as to the value of the property which, incidentally, is $1,000 more than petitioner claimed in his 1944 return. On this issue respondent is sustained. Issues 5 through 9. The question arising under these issues is whether the gains or losses from the sale of certain securities are gains or losses from the sale of capital assets. Petitioner purchased 100 shares of Electric Bond and Share on July 23, 1941, at a total cost of *288 $237.10. On March 10, 1944, these securities were sold for $981.53 resulting in a gain of $744.43. These shares were bought and held for investment or speculation and not for resale to customers. They were bought and sold through the New York Stock Exchange. As a dealer in securities petitioner did not handle securities which could be purchased on the New York exchanges. Petitioner included these shares in his inventory and the gain thereon was reported as ordinary income. In 1928 petitioner acquired 30 shares of Realty Trust and immediately thereafter transferred this stock to his wife. These shares were not held for resale to customers in the ordinary course of business and were never included in petitioner's inventory after 1928. In 1944 the corporation was liquidated and petitioner's wife received the proceeds thereon. There is no dispute as to the amount of the loss. The cost of the stock when acquired in 1928 was $1,060 and the amount received in 1944 was $420, resulting in a loss of $640. Petitioner's return for 1944 claimed the $640 as an ordinary loss. On November 28, 1944, petitioner purchased United States Treasury bonds at a cost of $25,000 and on December 8, 1944, he *289 purchased United States Treasury bonds at a cost of $200,000. On August 27, 1945, petitioner sold these bonds for $228,833.46, representing a gain of $3,833.46. These bonds were purchased and held for investment or speculation and not for resale to customers. Petitioner included these bonds in inventory and reported the gain from the sale thereof as ordinary income. Petitioner acquired 200 shares of Electric Bond and Share on April 26, 1943, and on April 20, 1944, he acquired an additional 100 shares. The total cost of the 300 shares was $2,244.04. These shares were sold on January 29, 1945, for $3,057.11, representing a gain of $813.07. Petitioner returned this gain as ordinary income. These securities were purchased and held for investment or speculation and not for resale to customers. They were bought and sold through the New York Curb Exchange. Petitioner included these securities in his inventory. The record shows that the petitioner purchased 200 shares of American Power and Light on July 23, 1941, at a cost of $259; on December 29, 1941, 200 shares were purchased at a cost of $78; and 100 shares were purchased on the same date at a cost of $39. On August 23, 1945, petitioner *290 sold 100 shares of American Power and Light for $680.98; on September 7, 1945, 100 shares were sold for $730.68; and on December 20, 1945, 300 shares were sold for $2,117.65. The total gain on the above sales was $3,153.31. On July 23, 1941, petitioner purchased 200 shares of Electric Power and Light for $409; on August 23, 1945, he sold 100 shares for $1,076.42 and on August 27, 1945, he sold 100 shares for $1,176.17; the total gain on the above sales was $1,843.59. These 700 shares were included in petitioner's inventory. Between April 14, 1937 to November 27, 1941, petitioner had purchased another 700 shares of these securities which were not included in petitioner's inventory. The gain on these 700 shares was $1,278.76. Petitioner reported the gain from sale of all of the 1,400 shares as ordinary income. All of these securities were purchased on the New York Stock Exchange and all were purchased and held for investment or speculation and not for resale to customers. Respondent in his deficiency notice treated the gain from the sale of the 700 shares not included in inventory as a gain from the sale of a capital asset held for more than six months. The amount of the gain is not *291 in dispute. Petitioner contends that all of these securities are entitled to the same treatment. Respondent contends that by including these securities in inventory petitioner is required to report any gains or losses from the sale thereof as ordinary income. It was not unreasonable for respondent to presume that the securities included in petitioner's inventory were securities held for resale to customers; however, petitioner has proved that the securities in controversy were bought and held for investment or speculation and not for resale to customers. Respondent's regulations permit a dealer in securities to include in inventory "only those held for purposes of resale and not for investment." [2] Petitioner having shown that these securities were purchased and held for investment or speculation, the gain or loss from the sale therefrom is taxable in accordance with the provisions of section 117 of the Internal Revenue Code. Carl Marks & Co., 12 T.C. 1196. Cf. Nelson A. Farry, 13 T.C. 8. *292 Issue 10. When petitioner reached the age of 70 years on June 7, 1945, he decided to retire as a dealer in securities. At that time he removed his sign from the office door, although he continued to occupy the office. Sometime prior to 1946, petitioner relinquished his license as a dealer in securities. Petitioner continued to carry his securities on an inventory basis, except for those which he handled for Mrs. Wood. Some of the securities sold in 1946 were never purchased for resale to customers but had been purchased solely for investment or speculation. The remaining securities which at one time were purchased for resale to customers were held during the year 1946 for investment or speculation. Respondent determined that all of petitioner's gains in 1946 from the sale of securities which were carried in inventory are taxable as ordinary income. Petitioner contends that the gains in 1946 were gains from the sale of capital assets and, therefore, taxable in accordance with the provisions of section 117 of the Internal Revenue Code. Petitioner's contention is based on the proposition that during the year 1946 he was not a dealer in securities and all of *293 the securities sold were held for investment or speculation. Regulations 111, section 29.22(c)-5 [3] which defines a dealer in securities specifically states that, "Taxpayers who buy and sell or hold securities for investment or speculation * * * are not dealers in securities within the meaning of this rule." The regulations are equally clear in stating that securities inventoried "may include only those held for purposes of resale and not for investment." These regulations do not mean that a dealer in securities who transfers securities from inventory to his investment account must get permission from the Commissioner to do so before he can treat them as capital assets. Carl Marks & Co., supra. We think that the mere failure to make a book entry transferring these securities to an investment account does not distinguish the case from Carl Marks & Co., supra.In that case we held that securities originally purchased for resale and later transferred from inventory to an investment account were thereafter capital assets. Petitioner, having proved that he was not a dealer in securities during the year 1946 but rather a taxpayer *294 holding securities for investment or speculation, is entitled to consider the securities held as capital assets and the gains and losses therefrom are taxable in accordance with section 117 of the Internal Revenue Code. However, petitioner being unable to identify the shares sold, respondent's method of determining petitioner's cost on the basis of first-in, first-out must be sustained. Issue 11. Petitioner's return for 1946 discloses total sales of United States Treasury bonds in the amount of $185,499.88. They were purchased for investment or speculation. The cost basis of these bonds used by petitioner was $181,000, resulting in a gain of $4,499.88. In his return petitioner reported as a long-term capital gain 50 per cent of the total gain or an amount of $2,249.95. In the deficiency notice as shown in Exhibit C attached thereto, the Commissioner, using the inventory method, determined that petitioner sold United States Treasury bonds in 1946 in the total amount of $185,499.89. A gain of $4,141.27 was determined in the deficiency notice and held taxable as ordinary income. The cost basis, as determined by the Commissioner on the bonds sold, was $181,358.62. *295 The gain as determined in the deficiency notice is, therefore, $358.61 less than the gain disclosed in petitioner's return for 1946. These bonds, having been purchased or held for investment or speculation, were capital assets and the gain thereon is taxable under the provisions of section 117 of the Internal Revenue Code. Petitioner contends that the gain of $4,141.27 determined by respondent in the deficiency notice is in error because the revenue agent's report shows a gain of $3,758.69. We said in J. Paul Blundon, 32 B.T.A. 285, that "Reports of revenue agents are not competent proof of the facts stated therein in the absence of an agreement to that effect." See also Series "A" Trust v. Helvering, 126 Fed. (2d) 530. Petitioner has failed to show that respondent's determination of a gain of $4,141.27 is in error. The gain, however, should be taxed as a capital gain. Decision will be entered under Rule 50. Footnotes
1. SEC. 22. GROSS INCOME. * * *
(c) Inventories. - Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.↩
2. REGULATIONS 111. Sec. 29.22 (c)-5. Inventories by Dealers in Securities. A dealer in securities who in his books of account regularly inventories unsold securities on hand either - (a) At cost, (b) At cost or market, whichever is lower, or (c) At market value. may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another method be authorized by the Commissioner pursuant to a written application therefor filed with the Commissioner as provided in section 29.41-2. A dealer in securities in whose books of account separate computations of the gain or loss from the sale of the various lots of securities sold are made on the basis of the cost of each lot shall be regarded, for the purposes of this section, as regularly inventorying his securities at cost. For the purpose of this rule, a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held for purposes of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation, irrespective of whether such buying or selling constitutes the carrying on of a trade or business, and officers of corporations and members of partnerships who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule.↩
3. See footnote 2, supra.↩