T.C. Memo. 2001-2

UNITED STATES TAX COURT

J. CLARK AND MARY R. BUNDREN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14171-98.                    Filed January 5, 2001.

<u>James Clinton Garland</u>, for petitioners.

<u>Brian A. Smith</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined the following
deficiencies and penalties with respect to petitioners' joint
Federal income taxes:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1995 | $6,245 | $1,249 |
| 1996 | 48,448 | 9,690 |

After concessions, the primary issues for decision are:

1.  The adjusted basis of a rental property located at 3435 South 116th East Avenue in Tulsa, Oklahoma (the 116th East Ave. property), immediately after petitioners acquired it in a section 1031 like-kind exchange in 1994.  Determination of this issue is dispositive of the depreciation deduction allowable with respect to the property for taxable year 1995 and of the amount of loss petitioners realized on their sale of the property in taxable year 1996; and

2.  whether for taxable years 1995 and 1996, petitioners are liable for accuracy-related penalties pursuant to section 6662(a).

Section references are to the Internal Revenue Code in effect for the relevant tax years.  Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

The parties have stipulated some of the facts, which are so found.  The parties' stipulation of facts and the associated exhibits are incorporated herein by this reference.

### Petitioners

At all times relevant to this proceeding, petitioners were married.  J. Clark Bundren is a medical doctor practicing in the fields of obstetrics/gynecology and infertility.  When petitioners filed their petition, they resided in Tulsa, Oklahoma.

Petitioners' Purchase of the 84th Street Property

On July 30, 1982, petitioners purchased a house at 4714 East 84th Street in Tulsa, Oklahoma (the 84th Street property), for approximately $183,000. Petitioners used the 84th Street property as their primary residence until they converted it to rental property in the spring of 1994. Altogether, petitioners spent approximately $50,130 on improvements to the 84th Street property, thereby increasing their total investment in the property to approximately $233,130. All these improvements were made while petitioners used the 84th Street property as their primary residence.

In October 1992, the Green Country Appraisal Service appraised the 84th Street property as having a fair market value of $150,500.

Conversion of the 84th Street Property to Rental Property

In 1994, petitioners moved to a house located at 3120 East 87th Street in Tulsa, Oklahoma (the 87th Street property).

Although petitioners preferred to sell the 84th Street property, a rise in conventional mortgage rates during the summer of 1994, coupled with the large number of houses on the market, made the sale of residential property in Tulsa difficult. The Tulsa real estate market had been in decline since 1982. In 1994, the Multiple Listing Service in Tulsa (a service which listed real estate for sale) had essentially stopped taking

residential listings because the real estate market was very slow.

As a result, in the spring of 1994, after conferring with their accountant, Mr. Patrick Walters (Walters), petitioners decided to convert the 84th Street property to rental property. From September to December 1994, petitioners rented the 84th Street property for a few hundred dollars a month.

Exchange of the 84th Street Property

Because of liability concerns associated with renting the 84th Street property, petitioners decided to dispose of it. Petitioners listed the 84th Street property for sale at $134,500. Petitioners' goal, however, was to find a person willing to exchange rental properties so that petitioners could obtain property in a part of town they believed more suitable for rental purposes. Petitioners informed their real estate agent of their desire to exchange rental properties.

Through the efforts of their real estate agent, petitioners were introduced to Ms. Delores Henson Youngblood (Youngblood), who owned the 116th East Ave. property. In September 1994, Youngblood had listed the 116th East Ave. property for sale for $67,500 with the realtor petitioners were using. Youngblood was interested in moving out of the part of town where the 116th East Ave. property was located and into the part of town where the

84th Street property was located.  Youngblood is unrelated to petitioners.

On December 7, 1994, petitioners and Youngblood agreed to exchange the 84th Street property for the 116th East Ave. property (the exchange).  The exchange was finalized on December 30, 1994.  The exchange was treated as essentially one transaction, but the terms were recorded as if the agreement constituted a sale by petitioners of the 84th Street property for $134,500 and a sale by Youngblood of the 116th East Ave. property for $67,500.

As part of the exchange, Youngblood paid the $134,500 sale price for the 84th Street property, plus settlement charges, taxes, and repair costs totaling $7,310.78, for a total of $141,810.78.[1]  These funds were used in large part to retire a $126,074.95 mortgage held by the Bank of Oklahoma with respect to the 84th Street property.

With respect to their acquisition of the 116th East Ave. property in the exchange, petitioners paid $67,500, plus settlement charges and taxes of $1,090.41, for a total of $68,590.41, financed in part by a $50,625 mortgage loan from the Bank of Oklahoma on the 116th East Ave. property.

---

[1] Youngblood paid $55,830.78 in cash at closing and financed most of the balance with funds borrowed from First Mortgage Corp.

Petitioners' Sale of the 116th East Ave. Property

On August 23, 1996, petitioners sold the 116th East Ave. property for $61,600.  Petitioners incurred closing costs of $10,668 on this sale.

Petitioners' Federal Income Tax Returns

With respect to the exchange, petitioners reported neither gain nor loss, nor did they mention the exchange on either their 1994 or 1995 Federal income tax return.  On their 1995 Federal income tax return, petitioners claimed depreciation of $5,186 on the 116th East Ave. property.[2]  On their 1996 Federal income tax return, petitioners claimed a $159,820 loss on the sale of the 116th East Ave. property.

OPINION

A.  Petitioners' Basis in the 116th East Ave. Property

Respondent determined that petitioners' adjusted basis in the 116th East Ave. property immediately after the exchange was $67,500, rather than $147,206, as asserted by petitioners.  Using this redetermined basis, respondent determined that petitioners are entitled to depreciation deductions with respect to the 116th East Ave. property of $1,650, rather than the $5,186 that they

---

[2] Apparently, on their 1994 Federal income tax return, petitioners claimed a $1,512 depreciation deduction with regard to the 116th East Ave. property.  This deduction is not in dispute here.

claimed on their 1995 Federal income tax return,[3] and that their deductible loss on the sale of the 116th East Ave. property was $13,406, rather than the $159,820 that petitioners claimed on their 1996 Federal income tax return. Determination of the correct adjusted basis of the 116th East Ave. property immediately after the exchange will be dispositive of these issues, as the parties have raised no other dispute about the computation of petitioners' 1995 depreciation deduction or the amount of petitioners' loss on the 1996 sale of the 116th East Ave. property.

The parties have stipulated that the exchange qualified for treatment as a like-kind exchange under section 1031. Consequently, petitioners' adjusted basis in the 116th East Ave. property immediately after the exchange was: (1) Petitioners' carryover basis in the 84th Street property immediately before the exchange, decreased by (2) any money (boot) they received in the exchange, and adjusted for (3) any gain or loss that was recognized on the exchange. See sec. 1031(d). The parties agree that petitioners recognized no gain or loss on the like-kind exchange.[4] Accordingly, the relevant

---

[3] On brief, respondent concedes that, because of a computational error in the statutory notice, the proper depreciation deduction allowable to petitioners is $1,687.50

[4] Respondent concedes, however, that petitioners' adjusted basis in the 116th East Ave. property immediately after the
(continued...)

issues are those described in (1) and (2) above.  We address each of these issues in turn.

    1.  <u>Petitioners' Carryover Basis in the 84th Street Property</u>

The parties appear to agree that petitioners' basis in the 84th Street property immediately before the exchange in December 1994 was unchanged from the time the property was converted from personal to business use in the spring of 1994.  At the time of the conversion, petitioners' basis in the 84th Street property was the lesser of the then fair market value or the adjusted cost basis.  See <u>Heiner v. Tindle</u>, 276 U.S. 582 (1928); <u>Higgins v. Commissioner</u>, T.C. Memo. 1995-139; <u>Frahm v. Commissioner</u>, T.C. Memo. 1974-138; sec. 1.165-9(b)(2), Income Tax Regs.  Respondent contends, and petitioners do not dispute, that the fair market value of the 84th Street property at the time of conversion was less than cost, which was at least $233,130.[5]  The question, then, is what the fair market value of the 84th Street property was when petitioners converted it from personal to business use.

"Fair market value" is defined as "the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and

----

[4](...continued)
exchange includes $10,668 in closing costs.

[5] This amount represents petitioners' total investment in the 84th Street property (i.e., the $183,000 paid by petitioners to purchase the property plus the approximately $50,130 they spent to improve the property).

both having reasonable knowledge of relevant facts." Gresham v. Commissioner, 79 T.C. 322, 326 (1982), affd. 752 F.2d 518 (10th Cir. 1985). The burden is on petitioners to prove that respondent's determination of fair market value is incorrect. See Rule 142(a).

Respondent contends that the fair market value of the 84th Street property at the time of the conversion (and also on the date of the exchange) was $134,500. As support for this position, respondent notes that this was the contract price for the 84th Street property as specified in the September 2, 1994, like-kind exchange with Youngblood only a few months after the conversion. Respondent also notes that the $134,500 figure is consistent with the gradual downturn in the Tulsa real estate market from the time petitioners purchased the property in 1982 for $183,000, until it was appraised for $150,500 in October 1992, until it was converted to rental property in 1994.

Petitioners contend that the fair market value of the 84th Street property was either $217,450--as reflected in their 1995 Federal income tax return--or alternatively, $200,000. Petitioners have offered no credible, admissible evidence, however, to support either of their alternative positions.[6]

---

[6] At trial, petitioners' tax return preparer, Mr. Patrick Walters (Walters), testified that in preparing petitioners' tax returns, he had relied on information from an appraiser regarding the value of the 84th Street property. At trial, Walters'

(continued...)

Accordingly, we sustain respondent's determination that petitioners' carryover basis in the 84th Street property was $134,500.

   2.   Boot Received by Petitioners in the Exchange

Respondent asserts that petitioners received $67,000 boot in the exchange, representing the difference between the $134,500 sales price paid by Youngblood for the 84th Street property and the $67,500 sales price paid by petitioners for the 116th East Avenue property.  On their 1995 and 1996 Federal income tax returns, petitioners' tax treatment of the 116th East Avenue property was predicated on the assumption that they received no boot on the exchange.  On brief, without explanation, petitioners compute the basis of the 116th East Ave. property by treating as boot $70,244, representing the difference in petitioners' $126,074 mortgage on the 84th Street property and the $55,830 cash payment that Youngblood made at the closing of the exchange.

---

[6](...continued)
testimony regarding the appraisal value was admitted over respondent's timely hearsay objection because petitioners stated that they were offering the testimony not to prove the truth of the matter contained in the statement (i.e., the fair market value of the 84th Street property at the time of the conversion), but merely to establish the manner in which Walters determined the tax treatment of the 116th East Ave. property.  For this limited purpose, the testimony is not hearsay within the definition of rule 801(c) of the Federal Rules of Evidence.  On brief, however, petitioners attempt to use Walters' testimony to evidence the fair market value of the 84th Street property.  For this purpose, the testimony is inadmissible hearsay.  See Fed. R. Evid. 801(c).

Without addressing the merits of either party's position, we deem petitioners to have conceded that they received as boot the smaller amount of $67,000, as determined by respondent. Cf. Barker v. Commissioner, 74 T.C. 555 (1980).

3. Conclusion

Petitioners' adjusted basis in the 116th East Ave. property immediately after the exchange was $78,168 ($134,500 carryover basis in the 84th Street property less $67,000 boot received in the exchange, plus the $10,668 in closing costs that respondent concedes should be added to the basis). The parties having raised no other dispute regarding petitioners' allowable 1995 depreciation deductions with respect to this property or regarding the amount of petitioners' loss on the 1996 sale of this property, respondent's determinations as to these issues are sustained.

B. Accuracy-Related Penalty

Respondent determined that petitioners are liable for the accuracy-related penalty under section 6662. Section 6662(a) imposes a 20-percent penalty on any portion of an underpayment that is attributable to, among other things, negligence or disregard of the rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the same circumstances. See Neely v. Commissioner, 85 T.C. 934 (1985).

No penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was reasonable cause and that the taxpayer acted in good faith. See sec. 6664(c). Whether a taxpayer acted with good faith depends upon the facts and circumstances of each case. See sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a professional tax adviser constitutes reasonable cause and is in good faith if, under all the circumstances, the reliance was reasonable and the taxpayer acted in good faith. See id. Reliance on a tax adviser or return preparer may be reasonable and in good faith if the taxpayer establishes: (1) The adviser or return preparer had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information; and (3) the taxpayer actually relied in good faith on the adviser's or return preparer's judgment. See, e.g., Sather v. Commissioner, T.C. Memo. 1999-309; Ellwest Stereo Theatres of Memphis, Inc. v. Commissioner, T.C. Memo. 1995-610, and cases cited therein.

From 1982 through the years in issue, petitioners relied on the accounting services of Walters, who has been a certified public accountant since 1977. Petitioners retained Walters to prepare both their individual tax returns and tax returns for their several business entities. Walters' experience and qualifications were sufficient to warrant reliance upon his

judgment.  Walters was intimately involved with petitioners' financial dealings, including the exchange.  He attended the closing of the exchange and reviewed the documents.  Accordingly, he was in possession of necessary and relevant information regarding the exchange.  Clearly, petitioners relied on Walters' judgment with regard to these matters.  On the basis of all the evidence in the record, taking into account the relative complexity of the tax issues involved and petitioners' lack of experience or training in such matters, we find that petitioners' reliance was reasonable and in good faith.  We conclude that the accuracy-related penalty should not be imposed.  See Coblenz v. Commissioner, T.C. Memo. 2000-131; Sather v. Commissioner, supra.

To reflect the foregoing,

Decision will be entered under Rule 155.