A. H. Morse Co. v. Commissioner.
A. H. Morse Co. v. Commissioner
Docket No. 29792.
United States Tax Court
1952 Tax Ct. Memo LEXIS 38; 11 T.C.M. (CCH) 1099; T.C.M. (RIA) 52327; November 17, 1952
E. Russell Greenhood, Esq., for the petitioner. William C. W. Haynes, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in the income tax of petitioner in the amounts of $19,609.67 for its fiscal year ended *39 June 30, 1947, and $11,928.69 for its fiscal year ended June 30, 1948. In an amended answer, respondent claims increased deficiencies of $1,316.88 for the fiscal year ended June 30, 1947, and $1,685.88 for the fiscal year ended June 30, 1948. The questions involved are whether the respondent erred (1) in disallowing deductions for depreciation on furniture and fixtures acquired by petitioner from George T. Neilson; (2) in disallowing part of a deduction taken by petitioner in each of the taxable years for depreciation of so-called exclusive sales franchises; (3) in disallowing as deductions payments made by petitioner to one Mable Simpson during the taxable years; (4) in determining that only $6,500 of attorneys' fees of $17,500 were deductible by petitioner as an ordinary and necessary business expense for the fiscal year ended June 30, 1947; (5) in allowing the petitioner additional deductions for Massachusetts excise tax in the notice of deficiency; and (6) in allowing the petitioner additional deductions for contributions in the notice of deficiency. Findings of Fact Part of the facts were stipulated and are found accordingly. Petitioner is a Massachusetts corporation with *40 its principal office in Boston, Massachusetts. Its income tax returns were filed with the collector of internal revenue for the district of Massachusetts. Its returns were filed and books kept on an accrual basis and on the basis of a fiscal year ended June 30. Albert H. Morse died on September 11, 1945. For approximately fifty years prior to his death he was the sole proprietor of a food brokerage business, operated under the name of A. H. Morse & Co. Albert H. Morse left a will which, among other things, provided: "Article Fourth: To George T. Neilson of Newton, Massachusetts, if he shall survive me, I give the good will of the business conducted by me in said Boston for many years as a produce broker and commission merchant, under the name of A. H. Morse and Company, together with the full and exclusive right to continue the use of my name in said business, either as it now stands or in combination with others. I further direct that following my death said George T. Neilson, if he shall survive me, shall continue said business with full authority and control till the end of the current fiscal year of the business in which my death shall occur, except that as soon as my executors *41 are appointed and qualified he shall forthwith turn over to them all cash then on hand or in bank to the credit of A. H. Morse and Company in excess of ten thousand ($10,000) dollars; and my executors in turn shall make such arrangements as to enable said George T. Neilson, in his sole and uncontrolled discretion, to make use of said sum of ten thousand ($10,000) dollars, together with any accretions thereto, as operating capital in the business till the end of such current fiscal year. "At the end of said fiscal year the books shall be balanced, using the same principles of accounting which are now and have for many years been used by me in keeping the books and accounts of said business, and said Neilson, if then living, shall have the right at his option to purchase from my estate all the assets of said business (other than the name and good will which as I have heretofore directed shall be an outright gift to him) for such sum as the books shall show upon such balancing, and as of the end of such fiscal year, to the credit of capital and surplus due me. The earnings of the business up to the end of said fiscal year shall be added to surplus, but said Neilson shall be entitled *42 to receive his salary for said period, at the same rate which he shall have been receiving at the time of my death, which salary shall be treated as an expense of the business for said period. If said Neilson shall exercise said option, he shall be permitted to pay for said assets by giving to my executors his individual unsecured promissory note or notes, for the full amount of the purchase price determined as above provided, maturing at such date or dates, not in any event later than one year from the end of said fiscal year, as my executors shall in their sole and uncontrolled discretion determine, said note or notes to bear interest at the rate of five per cent (5%) per annum, payable at least as often as semiannually, and to include the privilege of prepayment." For ten years prior to the death of A. H. Morse, George T. Neilson had been employed by A. H. Morse & Co. as general manager of its business. During that period the company represented twenty-seven canners and processors of food and sold their products to approximately 400 wholesalers, distributors and chain stores doing business in New England. The company had agreements or understandings with the canners and processors *43 as to brokerage commissions and the territory in which the company was to represent them. With three or four exceptions, these agreements or understandings were not in writing. The oral and written agreements were revocable by either party and had no determinable business life. During the period from September 11, 1945, the date of the death of A. H. Morse, and June 30, 1946, the end of the fiscal year of the company following his death, George T. Neilson operated the business of the company as directed in the will of the decedent. After his death, Neilson notified the concerns represented by the company of the provisions of the will giving him the right to succeed to the business and entered into negotiations for the handling of the accounts which the company had at the date of the death of Morse. He contacted them personally and by letter and solicited written agreements giving him, and a corporation he planned to organize to carry on the business, authority to be their exclusive sales representative in the New England states. As a result of this solicitation he obtained during the period from June 11 to June 19, 1946, twelve agreements in writing. The wording of eleven of these *44 agreements was substantially the same, except for the brokerage commission to be paid and the territory in New England for which the franchises were given. The following is a typical agreement. MEMORANDUM "Memorandum made this 17th day of June, 1946 by and between Warren Dried Fruit Co., San Jose, California, first party and George T. Neilson of Boston, second party. "WHEREAS the second party is succeeding to the Food Brokerage business operated under the name of A. H. Morse & Co.; "WHEREAS the said business of A. H. Morse & Co., through its former owner, represented the first party as exclusive sales representative; "NOW THEREFORE it is agreed as follows: "1. The first party hereby appoints the second party, (or any organization created by him to operate the Food Brokerage business referred to above), and the second party hereby agrees to act for the first party, as exclusive sales agent of the first party within the following territory: Entire New England States "2. The second party agrees to devote his best energies and those of his organization diligently to the representation of the first party and the sale of its products in the said territory. "3. The first *45 party shall pay to the second party a brokerage commission of two and one-half (2 1/2%) percent on all shipments by the first party within the territory specified above. "4. This agreement shall continue in full force and effect for Ten years, except that if the second party fails to furnish representation and procure sales satisfactory to the first party, the first party may cancel this agreement after first giving 90 days' notice in writing of such dissatisfaction and intention to cancel." /s/ George T. Neilson, George T. Neilson, Warren Dried Fruit Co.
By /s/ F. A. Schneider The other agreement, dated June 18, 1946, contained different wording. It appointed A. H. Morse & Co. as the exclusive sales representative of Walter P. Shiel & Co. in the New England States, and was signed for Shiel & Co. by its president and for "A. H. Morse & Co., By: G. T. Neilson". The term of the agreement was limited to five years and it contained the provision that it might be cancelled by either party on giving ten days written notice and be cancelled immediately by the violation of any of its terms. In addition to the twelve written agreements, Neilson also obtained oral authorization from *46 the remaining fifteen canners and processors, for whom A. H. Morse & Co. had acted as sales representative, to represent them in all or part of New England. Neilson paid $5,000 to the law firm of Greenhood, Cunningham & Eggleston for legal services rendered in connection with the agreements with the various canners and processors. With the exception of this payment, the agreements were acquired by Neilson without cost. The assets of A. H. Morse & Co. as of June 30, 1946, were as follows. Book Value
Office furniture, fixtures, and
equipment (fully depreci-
ated)
None
1941 Dodge Sedan
$ 300.00
Lincoln automobile
3,000.00 *
Cash
75,234.28
Name and good will
None
A check in the amount of $234.28 was issued by A. H. Morse & Co. to the estate of A. H. Morse in the latter part of June 1946. A. H. Morse Co. (hereinafter referred to as the "petitioner") was incorporated under the laws of Massachusetts on July 1, 1946, with an authorized capital of 5,000 shares of no par value common stock. Its incorporators were George T. Neilson and five other former employees of A. H. Morse & Co. Its directors, *47 at their first meeting, declared the value for its capital stock to be $100 per share. In arriving at this value for the stock the directors took into consideration the estimated value of the assets to be received by the petitioner from Neilson. On July 1, 1946, an instrument entitled "promissory note" was executed, payable to the executors under the will of Albert H. Morse, in the amount of $75,300. This note was signed by George T. Neilson, and contained an "endorsement" by petitioner. The "endorsement" was signed on behalf of petitioner by George T. Neilson, president, and G. L. Holbrook, treasurer. They were authorized to execute this endorsement at the first meeting of the directors of petitioner. On July 1, 1946, the executors of the will of Albert H. Morse executed a bill of sale which provided that in accordance with the provisions of the will and in consideration of a promissory note in the principal sum of $75,300 dated July 1, 1946, payable within one year and bearing interest at the rate of five per cent per annum, they assigned, set over and transferred to George T. Neilson all the physical assets of the business operated under the name of A. H. Morse & Co. including *48 all officer furniture, fixtures and equipment, a 1941 Dodge sedan, and all other tangible property of every nature and description used in connection with the business; (2) all of the cash and accounts receivable of A. H. Morse & Co. as of the close of business on July 30, 1946, up to but not in excess of $75,000; and (3) the good will of the business conducted by A. H. Morse under the name of A. H. Morse & Co., together with the full and exclusive right to continue the use of the name "Albert H. Morse" or "A. H. Morse" either as it stood or in combination with other names. George T. Neilson transferred to petitioner by a bill of sale dated July 1, 1946, in consideration for the issuance of 4,829 shares of its capital stock, the following assets: Cash
$75,000 Office furniture, store fixtures, and office equipment. 1941 Dodge Sedan Right to use the name Albert H. Morse or A. H. Morse in connection with the name of the corporation. "Franchises." All other assets of every nature and description belonging to the company operated under the firm name of A. H. Morse & Co. The books of petitioner show that stock was issued for assets received as of July 1, 1946, as *49 follows: No. of shares
Cash
750
Furniture and fixtures
70
1941 Dodge Sedan
8
Good will
1
Franchises
4,000
4,829
Two checks were issued on the account of A. H. Morse & Co. at The First National Bank of Boston, one dated June 28, 1947, in the amount of $25,000, and the other dated July 3, 1946, in the amount of $50,000. These checks were payable to the order of petitioner and were signed "A. H. Morse & Co. G. T. Neilson". The bank account of petitioner shows deposits of $50,000 on July 5, 1946, and $25,000 on August 22, 1946. The receipt of the $75,000 was recorded on the cash book of petitioner as follows: July 1, 1946 Cash
George T. Neilson
Purchase Capital
Stock
$50,000
Aug. 22, 1946 Cash
George T. Neilson
Purchase Addition-
al Capital Stock
$25,000
The following entries were made in the books of petitioner as of July 1, 1946: Cash
$ 75,000
Furniture and fixtures
7,000
Franchises
400.000 *
Automobile (1941 Dodge
Sedan)
800
Good will (use of name)
100
Capital Stock
$ 75,000
Capital Stock
407,900
*50 The stock record book of petitioner shows the following entries: Cer-
tifi-
cate
No. of
No.
Date
shares
Issued to
1
7/1/46
4,500
G. T. Neilson
2
7/1/46
29
G. T. Neilson
3
7/1/46
100
Goldwin L. Holbrook
4
7/1/46
100
Harold T. Gould
5
7/1/46
50
Robert P. Marsh
6
7/1/46
25
Joseph F. Chadbourne
7
7/1/46
25
Lewis C. Daniels All of the persons to whom stock was issued were former employees of A. H. Morse & Co. George T. Neilson made the transfers of all the property for which shares of stock of petitioner were issued. He made such transfers solely in exchange for 4,529 shares and was, immediately after the exchange, in control of petitioner. He reported no gain or loss on the exchange in his individual income tax return for the year 1946. The stock record book of petitioner shows transfers on July 2, 1946, from Neilson to Goldwin L. Holbrook, Harold T. Gould, Robert P. Marsh, Joseph F. Chadbourne, and Lewis C. Daniels of 300 shares of the stock of petitioner. These individuals each agreed to pay Neilson $30,000, or $100 per share, at the rate of $3,000 per year for ten years. [1] At the time these agreements were consummated *51 they were given information with respect to the earnings, volume of business and net profit made by A. H. Morse & Co. The petitioner paid to the estate of Albert H. Morse $25,000 plus interest of $941.25 on October 1, 1946; $25,000 plus interest of $628.75 on January 2, 1947; and $25,300 plus interest of $632.50 on June 30, 1947. When these payments were made George T. Neilson returned 753 of the shares that had been issued to him and his capital stock account on the books of petitioner was reduced by $75,300. In its income tax returns for the fiscal years ended June 30, 1947, and June 30, 1948, the petitioner reported the basis of the furniture and fixtures it acquired from Neilson to be $7,000, that they had a useful life of ten years, and deducted depreciation of $700 for each year. It also took deductions in these returns of $40,000 per annum for "Amortization of Franchises". The claimed deductions were disallowed by the respondent. On the books of A. H. Morse *52 & Co. there appeared an account labeled "Investment: Ella J. Morse", $16,000. Ella J. Morse was the mother of Albert H. Morse and Mabel Simpson. Mabel Simpson was 75 years old at the time of the death of Albert H. Morse. During his lifetime, Neilson promised Morse that he would pay Mabel Simpson $300 per month as long as she lived. In the bill of sale from Neilson to petitioner dated July 1, 1946, petitioner assumed "the obligation to Mabel Simpson of New York, New York, to pay her $300 per month for life". Mabel Simpson never performed any services either for petitioner or for A. H. Morse & Co. During the fiscal year ended June 30, 1947, the petitioner made 13 payments of $300 each to Mabel Simpson, totaling $3,900, and during the fiscal year ended June 30, 1948, 12 payments of $300 each, totaling $3,600. Deductions of $3,900 and $3,600 were claimed by the petitioner in its returns for these years as "miscellaneous administrative expense". The claimed deductions were disallowed by the respondent. The law firm of Greenhood, Cunningham & Eggleston presented the petitioner with a bill in the amount of $17,500 for legal, accounting and professional services up to and including June 30, 1947. The *53 bill contained a list of 26 services rendered by the law firm but did not itemize the specific charge for each service. One of the services was listed as "Divers conference with Mr. George T. Neilson and Attorney Philip B. Buzzell in regard to obtaining the assets of Albert H. Morse and the transfer thereof to A. H. Morse Co." Philip B. Buzzell was one of the executors under the will of Albert H. Morse. When Neilson was notified by the executors that he was a legatee under the will, he consulted the law firm and was told that the will was clear and understandable and that no legal advice was necessary in connection with its provisions. On June 30, 1946, he also consulted with a member of the law firm when the executors presented to him certain documents and instruments for his signature and he received advice as to whether or not he should accept them and sign them. The petitioner claimed the entire amount of $17,500 as a deduction in its return for the fiscal year ended June 30, 1947. The respondent determined that only $6,500 of this amount was deductible by petitioner as an ordinary and necessary business expense, as follows: Legal expense - per return
$17,500.00
Less -
Personal expense of G. T.
Neilson
$4,000
Cost of securing franchises
5,000
Corporation organization ex-
pense
2,000
11,000.00
Deductible legal expense
$ 6,500.00
*54 Reasonable compensation for the legal services rendered to Neilson personally was $2,000, and reasonable compensation for the services rendered to petitioner in connection with its business was $8,500. Petitioner received excise tax bills from the Commonwealth of Massachusetts on September 20, 1948, in the amount of $2,697.91 for the fiscal year ended June 30, 1947, and on September 20, 1949, in the amount of $2,286.44 for the fiscal year ended June 30, 1948. Petitioner claimed no deduction for Massachusetts excise tax on its income tax return for the fiscal year ended June 30, 1947, and claimed a deduction for Massachusetts excise tax in the amount of $3,062.88 in its return for the fiscal year ended June 30, 1948. In determining the deficiencies, the respondent estimated the additional Massachusetts excise tax liability which would be incurred by the petitioner by reason of the disallowance of deductions claimed in its returns to be $3,041.40 for the fiscal year ended June 30, 1947, and $2,572.73 for the fiscal year ended June 30, 1948, and allowed the deduction of these amounts in each taxable year in addition to the amounts shown on the tax bills received from the Commonwealth *55 of Massachusetts. During its fiscal year ended June 30, 1947, the petitioner made contributions in the amount of $744.70 to organizations of the kind described in Section 23(q)(2) and (3) of the Internal Revenue Code. It took as a deduction for contributions the amount of $320.62, or 5 per centum of its net income as computed without the benefit of any deduction for contributions. During its fiscal year ended June 30, 1948, the petitioner made contributions in the amount of $608.20 to organizations of the kind described in Section 23(q)(2) and (3) of the Internal Revenue Code. It reported no taxable net income in its return for that year and took no deduction for contributions. In determining the deficiencies the respondent, by reason of the disallowance of the deductions in controversy in this proceeding, allowed the deduction of contributions of $424.08 in addition to the $320.62 claimed in petitioner's return for the fiscal year ended June 30, 1947, and allowed the deductions of contributions of $608.20 made by petitioner during its fiscal year ended June 30, 1948. In an Amended Answer to Petition As Amended filed by the respondent *56 with this Court on February 5, 1952, he alleges that the petitioner is not entitled to additional deductions for estimated additional Massachusetts excise tax in the amount of $3,041.40, and for contributions in the amount of $424.08, which he erroneously allowed in determining the deficiency for the fiscal year ended June 30, 1947; that the deficiency determined for that year is understated in the amount of $1,316.88; and asks that the deficiency of $19,609.67, originally determined by him in the notice of deficiency, be increased in the amount of $1,316.88. He also alleges that the petitioner is not entitled to additional deductions for estimated additional Massachusetts excise tax in the amount of $2,572.73, and for contributions in the amount of $608.20, which he erroneously allowed in determining the deficiency for the fiscal year ended June 30, 1948; that the deficiency determined for that year is understated in the amount of $1,685.88; and asks that the deficiency of $11,929.69, originally determined by him in the notice of deficiency, be increased in the amount of $1,685.88. Opinion RAUM, Judge: The general rule, as stated in subsection 113(a) of the Internal Revenue Code *57 , is that the basis of property is the cost of such property. An exception to that general rule contained in Section 113(a)(8) provides that if the property was acquired by a corporation by the issuance of its stock in connection with a transaction described in Section 112(b)(5) the basis shall be the same as it would be in the hands of the transferor. The acquisition by petitioner of the assets from Neilson for stock which gave him control of petitioner immediately after the exchange is such a transaction. Petitioner is, therefore, entitled to the basis which these assets had in the hands of Neilson. Section 113(a)(5) states that if property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value at the time of such acquisition. Furniture and fixtures. Neilson testified that the fair market value of the furniture and fixtures at the time he acquired them from the executors was $7,000. Petitioner contends that under the provisions of Section 113(a)(5) it is entitled to use this amount as its basis for depreciation. In support of this contention, it argues that, under the will of Albert H. Morse, Neilson was given the option to acquire the tangible *58 assets of A. H. Morse & Co. by paying to the executors their book value; that the furniture and fixtures were carried on the books of the company at no value at the time the option was exercised; that under these circumstances the will, in legal effect, provided that Neilson was to have these assets at no cost, and, therefore, as a testamentary gift or bequest; that Neilson's basis for these assets under Section 113(a)(5) was their fair market value; and that since it acquired them from Neilson in exchange for stock, its basis under Section 113(a)(8) was the same as that of Neilson. We do not agree with petitioner. The will of Albert H. Morse provided that Neilson should "have the right at his option to purchase from my estate all the assets of said business (other than the name and good will which * * * shall be an outright gift to him) for such sum as the books shall show upon such balancing, and as of the end of sush fiscal year, to the credit of capital and surplus due me." Thus the decedent differentiated between assets of the business Neilson should receive by gift and those which he could acquire only by "purchase", and any intention on the part of the decedent to make a gift *59 to Neilson of any assets other than the name and good will is clearly absent. Moreover, the furniture and fixtures, among other things, were transferred to Neilson by the executors by a bill of sale "in accordance with the provisions of said will and in consideration of the promissory note in the principal sum of seventy-five thousand three hundred ($75,300.) dollars * * *". The price paid for all assets purchased was the aggregate of the amounts shown on the books of A. H. Morse & Co. when they were balanced on June 30, 1946. The fact that the books then showed cash of $75,000, $300 for the 1941 Dodge automobile, and nothing for furniture and fixtures, does not justify petitioner's conclusion that Neilson received the cash and automobile for $75,300 and the furniture and fixtures as a gift. All assets, except the name and good will, were purchased by Neilson for $75,300. Under such circumstances their basis to Neilson under Section 113(a) was cost and their basis to petitioner under Section 113(a)(8) was cost to Neilson. The respondent determined that no part of the cost of the purchased assets should be allocated to the furniture and fixtures. His determination is in accord with *60 the allocation made in determining the total price paid for the purchased assets, and is approved. Cf. Nathan Blum, 5 T.C. 702, 709. Franchises. Prior to his death Albert H. Morse had agreements or understandings with about twenty-seven food canners and producers permitting A. H. Morse & Co., which he operated as an individual, to be their exclusive sales representative in the New England territory. These agreements or understandings were not for any definite period and could be cancelled at any time by either party. When Morse died and Neilson decided to exercise the option in the will to purchase the assets and carry on the business, he secured from twelve of the canners and producers written agreements authorizing him or a corporation he intended to organize to act as their exclusive sales representative for a ten-year period. He transferred these "franchises" to petitioner. He testified that their fair market value was between $400,000 and $500,000 at the time of their acquisition, and another witness testified they had a value of $424,000 at that time. When petitioner commenced business on July 1, 1946, these "franchises" were entered on its books at $400,000, *61 and it deducted depreciation of $40,000 in its returns for each of the taxable years. The parties disagree as to whether petitioner's basis for depreciation is cost of the "franchises" or their fair market value when acquired by Neilson. The petitioner contends that Neilson acquired all of the franchises formerly owned by Albert H. Morse or A. H. Morse & Co. by inheritance as a part of the good will of the business which was given to him in the will of Albert H. Morse; that having acquired them by inheritance their basis to Neilson and to it was their fair market value at time of acquisition under the provisions of Section 113(a)(5) and 113(a)(8); that all Neilson did with respect to the franchises was to improve and extend the useful life of old assets; that Section 113(a)(5) contains no words forbidding a legatee from changing the form of his legacy, or from improving or extending the useful life of the property inherited; and that, if it be held that new assets were created by the written agreements, the resulting basis would be the same under Heiner v. Tindle, 276 U.S. 582. We do not agree with petitioner. It is entitled to use the fair market value of the so-called *62 franchises as its basis for depreciation only in the event that such was their basis in the hands of its transferor, Neilson. Neilson is entitled to that basis if he acquired these "franchises" by inheritance under the will of Albert H. Morse. The only assets Neilson acquired under that will were the name and good will of the business of A. H. Morse & Co. operated by Morse prior to his death. The efficient representation by Morse of the canners and producers during the years he operated the business may have enhanced the value of the good will, but Neilson did not acquire any franchises as part of the good will. Neither did he acquire any franchises from Morse in any other manner, since Morse did not have any right during his lifetime to assign or transfer any of the oral agreements or understandings which he and his company had with the canners and producers. This is apparent from the fact that when Neilson decided to purchase the assets and continue the business he communicated with the canners and producers and attempted to secure from them new agreements authorizing him or the corporation he was to organize to act as their exclusive sales representative in New England for a ten-year *63 period. He was successful in acquiring 12 written franchises which petitioner now seeks to amortize or depreciate over a ten-year period. They were acquired by Neilson without cost except for the fee of $5,000 paid to attorneys for advice and services in connection with their acquisition. Inasmuch as the method of acquisition is not covered by any of the exceptions contained in Section 113, the general rule contained in that section that the basis of property is cost applies. The respondent correctly determined that cost of the franchises to Neilson was $5,000 and that petitioner was entitled to this amount as its basis for depreciation under the provisions of Section 113(a)(8). The respondent's allowance of $500 for depreciation in each of the taxable years is approved. The decision in Heiner v. Tindle, relied upon by the petitioner is not in point. In that case the Court held that where non-business property is converted to a business use, the basis could be the fair market value of the property on the date of conversion. Here there was no conversion of an asset from non-business to business use. The franchise was acquired by Neilson for income-producing purposes and they were *64 devoted to those purposes. They specifically provided that if Neilson, or any organization created by him to operate the business, failed to produce sales satisfactory to the canners and producers, the latter could cancel them. Payments to Mabel Simpson. During its fiscal year ended June 30, 1947, the petitioner made thirteen payments of $300 each to Mabel Simpson and during its fiscal year ended June 30, 1948, the petitioner made to her twelve payments of $300 each. Deductions taken for these payments in its income tax returns were disallowed by the respondent. Petitioner contends the payments to Mabel Simpson are deductible as interest paid or accrued within the year on indebtedness under the provisions of Section 23 (b) of the Internal Revenue Code. Interest within the meaning of Section 23 (b) has been defined as "the amount which one has contracted to pay for the use of borrowed money". Deputy v. DuPont, 308 U.S. 488. There is no evidence of any loan to petitioner or to A. H. Morse & Co. by Mabel Simpson or by anyone on her behalf or by anyone to whose interest she succeeded by operation of law or otherwise. All that the evidence shows *65 is that the books of A. H. Morse & Co. disclosed an investment by Ella J. Morse of $16,000; that she was the deceased mother of Mabel Simpson and Albert H. Morse; that Neilson promised Albert H. Morse during his lifetime to pay $300 per month to Mabel Simpson during her lifetime; that a provision for the assumption of this "obligation" by petitioner was contained in the bill of sale executed by Neilson on July 1, 1946; and that Mabel Simpson never performed any services either for A. H. Morse & Co. or for the petitioner. Whether these payments may properly be considered as part of the cost of the assets involved, or whether they may otherwise result in tax consequences are issues that are not before us. The only question before us is whether they are deductible as interest or as ordinary and necessary business expenses. We are satisfied that they are not so deductible, and respondent's determination in this respect is approved. Legal expenses. Petitioner received a bill for legal services rendered through June 30, 1947, in the amount of $17,500. The bill itemized the services rendered but not the specific charges for each service. The petitioner claimed the entire amount as a *66 deduction in its 1947 return. The respondent in determining the deficiency for that year made the following allocation: Personal expense of George T. Neilson
$4,000
Cost of securing franchises
5,000
A. H. Morse Co. organization expense
2,000
A. H. Morse Co. ordinary expense
6,500 At the trial the petitioner through its counsel agreed with the allocation made to cost of securing franchises and organization expense. The petitioner contends, however, that the legal services rendered Neilson in connection with his personal affairs were of a very trival nature, and that reasonable compensation for such services would be not in excess of $100. The bill lists as one of the services rendered - "Divers conferences with Mr. George T. Neilson and Attorney Philip B. Buzzell in regard to obtaining the assets of Albert H. Morse and the transfer thereof to A. H. Morse Co." The burden of proving that the respondent's allocation of $4,000 to these services was erroneous was on the petitioner. We are satisfied from an examination of the services rendered by the law firm and from testimony by Neilson as to the services rendered by it to him in connection with his personal affairs *67 that reasonable compensation for these personal services would be $2,000 and that petitioner is entitled to a deduction for legal expenses incurred in connection with its business of $8,500 in lieu of the amount of $6,500 allowed by the respondent. Massachusetts Excise Tax. Section 32 of Chapter 63 of the General Laws of Massachusetts provides that every domestic business corporation shall pay annually on excise consisting, in part, of an amount equal to two and one-half per cent of its net income determined to be taxable in accordance with the provisions of this chapter. Section 35 provides that every domestic business corporation shall, on or before the tenth day of April, make a return giving such information as the commissioner requires for the determination of the tax. Section 36 provides as follows: "Correction of Return; Additional Tax. - Any final determination of the federal net income made pursuant to the provisions of federal law under which such net income is found to differ from the net income originally reported to the federal government shall be reported by the corporation to the commissioner within seventy days of receipt by it of notice of such final determination, *68 with a statement of the reasons for the difference, in such detail as the commissioner may require. If from such report or upon investigation it shall appear that the tax with respect to income imposed by this chapter has not been fully assessed, the commissioner shall within six months of the receipt of such report or within six months of discovery of such a determination, if unreported, assess the deficiency, with interest at the rate prescribed in section forty-eight from April tenth, of the year in which the original return of income of the corporation was due to be filed, and the tax so assessed shall be payable thirty days from the date of notice to the corporation of such assessment. * * *" The petitioner received bills for Massachusetts excise tax from the Commonwealth of Massachusetts in the amount of $2,697.91 for its fiscal year ended June 30, 1947, and $2,286.44 for its fiscal year ended June 30, 1948. In determining the deficiencies the respondent allowed the petitioner deductions for Massachusetts excise tax equivalent to the amount shown on each bill plus the additional amount which according to his estimate would result from the adjustments he made to petitioner's *69 income in each year. The additional amount allowed as a deduction for the year ended June 30, 1947, was $3,041.40, and for the year ended June 30, 1948, $2,572.73. In his amended answer, respondent alleges that he erred in allowing these additional amounts as deductions. The petitioner is on the accrual basis. On that basis taxes are not deductible as an expense until liability to pay them becomes fixed. Liability of petitioner to pay additional Massachusetts excise tax for the years ended June 30, 1947, and June 30, 1948, was not fixed by the adjustments to its income made by the respondent. It is contesting those adjustments in this proceeding. Under the provisions of Section 36 of Chapter 63 of the General Laws of Massachusetts the events which fix its liability for additional tax are a final determination of its Federal net income, a report thereof made to the Massachusetts commissioner of taxation, and an assessment by him of any additional excise tax determined to be due. These events have not occurred, and since petitioner was on the accrual basis, deduction of the amounts in question must await resolution of the controversy fixing its liability. We hold, therefore, that the *70 respondent erroneously allowed deductions for additional Massachusetts excise tax in the amount of $3,041.40 for the year ended June 30, 1947, and $2,572.73 for the year ended June 30, 1948. Contributions. Section 23 (q) of the Internal Revenue Code provides that in computing net income of a corporation there shall be allowed as deductions contributions made to certain organizations described therein "to an amount which does not exceed 5 per centum of the taxpayer's net income as computed without the benefits of this" section. Petitioner made contributions to organizations described in this section of $744.70 during its fiscal year ended June 30, 1947, and, after applying the 5 per cent limitation, claimed as a deduction the amount of $320.62. During its fiscal year ended June 30, 1948, it made similar contributions totalling $608.20, reported no taxable net income, and claimed no deduction for contributions. In determining the deficiencies the respondent, by reason of the disallowance of the deductions in controversy, allowed the deduction of all of the contributions made by petitioner in each of the taxable years. He alleges in his amended answer that he *71 erred in allowing a greater deduction in each of these years than was claimed by petitioner in its returns. We disagree with respondent. The petitioner under the provisions of Section 23 (q) is entitled to deductions for contributions made in each of the taxable years to an amount which does not exceed 5 per cent of its net income as computed without the benefits of this section. As the result of our approval of the disallowance of deductions made by the respondent, the petitioner's net income for each of the taxable years has been substantially increased over that reported in its returns. The 5 per cent limitation provided for in Section 23 (q) should be applied to the net income as so increased, and to the extent that petitioner's contributions in each year do not exceed the limitation, they are deductible. Decision will be entered under Rule 50. Footnotes
*. This asset was not acquired by George T. Neilson.↩
*. This amount is what Neilson estimated to be the value of the 12 written "franchises" which he transferred to petitioner.↩
1. The income tax returns of petitioner for the fiscal years ended June 30, 1947, and June 30, 1948. state that Harold T. Gould owned 130 shares, Goldwin L. Holbrook 130 shares, and Robert P. Marsh 80 shares.↩